JOEL C. McDOWELL, et al., plaintiff in error, vs. WILLIAM H. PRESTON, defendant in error.

Notwithstanding, no one of the grounds separately considered, would be strong enough to entitle a party to a new trial; yet when taken altogether injustice seems to have been done, the Court will award a re-hearing.

To discredit or weaken the testimony of a witness, it is not enough to show, that the witness was in the habit of using laudanum. The proof must go further, and establish either, that the mind of the witness was impaired generally, or at least under the influence of the opiate at the time the testimony was taken.

Assumpsit, in Jasper Superior Court.    Tried before Judge HARDEMAN, at April Term, 1858.

This was an action brought by William H. Preston, against Joel C. McDowell, principal, and Daniel McDowell, surety, on two promissory notes.

The defence was that the consideration of the notes sued on was, three negroes, sold by the plaintiff as guardian, at public outcry, and bought by Joel C. McDowell, and that at said sale, plaintiff falsely and fraudulently represented that one of said negroes, (Kesiah,) was sound, knowing at the time that she was unsound.

## Brief of Evidence.

Plaintiff tendered and read in evidence the notes sued on, one for $648 56, the other for $486 44, dated 6th February, 1855; and both payable by 25th December next, thereafter. Here plaintiff rested.

## Evidence for Defendant.

*Wm. T. McDowell* testified on direct examination: That he was present on the day the negroes, Mary and her children, Henry and Kesiah, were sold by plaintiff. Has heard both parties admit that the notes sued on were given for the purchase of the negroes; Mary and her child Henry, brought $705; Kesiah sold for something over $400. Whilst Kesiah was being cried, some one asked S. D. Blackwell, the crier, if the negroes were sound property. Blackwell replied, that he did not know, that the owner Mr. Preston could tell. Preston was present and called on Daniel McDowell to state whether the negro woman was sound property or not. Daniel McDowell got upon the stand and stated that the negro woman Kesiah was a sound negro; the bidding then went on, and the negro woman was knocked off to the defendant, J. C. McDowell for $400 and upwards, cannot state the exact amount.

*Elizabeth Davidson* examined by commission, testified as follows:

1st. I know the parties.

2d. I know negro woman Kesiah, hired said negro woman from Wm. H. Preston, Jr., the fall before she was sold, and kept her about six weeks. I paid eight dollars and a quarter for her, for the time I had her hired. I paid one dollar and a quarter to Preston, and by agreement, Miller W. Pope was to pay said Preston the remainder. Kesiah was complaining of pain in her leg, knee and hip, (right leg, I think,) all the time I had her hired, but was not confined to bed; when I would hurry her about her business, she would excuse

herself on account of the pain. I informed said Preston of the condition of said negro woman and refused to hire her on account of her condition. I informed said Wm. H. Preston of the condition of said negro woman, the evening before I sent her home, which was before said Preston sold said negro woman. I did not demand a deduction for the time I had said negro woman hired, but I refused to hire her longer because I thought the price too much for a negro in her condition.

3d. I do not know who bought said negro woman at the sale, but I understood Joel C. McDowell bought her.

*Cross-Examined.*—1st. Yes; because I thought the price too much for a negro in her condition.

2d. I have related all that I know, that will benefit either plaintiff or defendant.

*Zack Bailey* testified : That he knew Kesiah; she came to his mother's the day after she was purchased by defendant; she was lame and unable to walk but little; his mother examined her in his presence; her knee (thinks the right knee,) was much swollen; she remained at his mother's until 1857; has never recovered. His mother has treated her whilst she staid at her house for the affliction; thinks the negro not worth more than two hundred dollars in her diseased condition.

*A. C. Dozier* testified : That he knew Kesiah; hired her for two weeks just before she was sold by plaintiff; she complained a great deal of pains in her limbs, her knees, legs, &c. Did not wish to keep her on account of her inability to work; considers her in her unsound condition, worth but little; two hundred dollars a big price for her.

*Cross-Examined.*—Looks like she was forty-five or fifty years old.

*A. P. Baker* testified: That he knew negro woman Kesiah; overseed for Daniel McDowell four years; that negro woman Kesiah complained when put to plowing; complained of pains in her legs, knees, &c., at times; had to be ta-

ken from the plow and put to the hoe, on account of her pains.

*S. G. Garratt,* testified : That he knew the negro woman Kesiah, that he hired her a few months before she was sold by plaintiff. That the negro woman complained all the time of pains in her knees, legs, &c.; became unable to discharge her business, *broke down entirely;* he sent her home on account of her inability to labor.

Defendant here closed, and plaintiff in rebuttal introduced the following evidence :

*Dr. Wm. Dougherty* testified : That he lived three or four miles from J. C. McDowell, was his family physician ; had never been called in to see Kesiah, nor to prescribe for her; that he had lived at Daniel McDowell's; that Kesiah appeared well.

*Cross-Examined.*—Mrs. McDowell, wife of Daniel McDowell, had considerable medical skill, and gave great attention to the negro women while he lived there; when rheumatism is chronic, it is incurable, and is so considered by physicians; it becomes chronic in a year or so.

*Daniel McDowell* testified : That he owned Kesiah several years, say six years before she went into the possesion of plaintiff, made the announcement as testified to by Wm. T. McDowell, believed it true at the time he said it, and thought at the time it was true; did not know of the afflicted condition of Kesiah.

*Cross-Examined.*—Mrs. McDowell was considered skilfull in the treatment of diseases in the family, and gave much attention to the treatment of diseases in the family negroes. He paid little or no attention to it.

*Benajah Hardy* testified : That he had known Mrs. Elizabeth Davidson to take laudanum; had carried her many bottles from town; has seen her take it sometimes. [Defendant's counsel objected to this evidence as irrelevant. The Court overruled the objection, and defendant excepted.]

Hired the negro woman Kesiah the present year for the Rev. Mr. Shipper in the latter part of January, agreed to give forty-five dollars for her.

*E. B. Smith* testified : That on the day of the sale of the negroes by plaintiff, and before the negroes were sold, witness was passing through the Court House, plaintiff asked witness to run the negroes for him, when they were exposed to sale. Does not recollect what price he was to run them to; plaintiff said if the negroes were knocked off on witness, that he would take the negroes at his bid. Defendant's counsel objected to the introduction of this evidence. The Court overruled the objection, and defendant excepted.

The letters of guardianship of Wm. H. Preston, were introduced ; the letters bear date 2d day of October 1854.

At the close of the testimony, and after argument by counsel, the Court charged the jury, that if they should find from the evidence that the negro woman Kesiah was unsound at the time of the sale, and that Daniel McDowell represented her sound at the instance of the plaintiff Preston; he Preston knowing at the time, that the negro woman was unsound, then they should find for the defendant the amount of the difference in the price of Kesiah in her sound and unsound condition, and it was immaterial whether Daniel McDowell when he made the representations, believed them to be true or not.

The jury retired and returned a verdict in favor of the plaintiff, for the principal and interest due on said notes with cost of suit.

And the counsel for the defendant then and there moved for a new trial on the following grounds, to-wit:

1st. Because the jury found contrary to the evidence in the case, and against the weight of the evidence.

2d. Because the jury found contrary to the law of the case, and against the equity of the case.

3d. Because the Court erred in admitting the evidence of Edward B. Smith, a witness for the plaintiff, to prove the sayings of the plaintiff, made the day of the sale of the negroes, and before the negroes were sold; and because the Court erred in admitting the evidence of Benajah Hardy, that he had known Mrs. Elizabeth Davidson to take laudanum.

4th. Because the defendant, J. C. McDowell who was principal in said case, was hindered from attendance on the trial of said case by illness and indisposition, which was unknown to his counsel; the presence of said Joel C. being material and indispensable to his counsel in said case in conducting the same.

*Defendant filed the following affidavit.*

GEORGIA, Jasper county.

In open Court comes Geo. T. Bartlett, attorney at law for Joel C. McDowell and Daniel McDowell, who being duly sworn, says, that on Monday the first day of the April Term of this Court, when said case was called, deponent did not know of the illness of his client; that deponent did believe, and still believes, that the presence of said J. C. McDowell was necessary and material to aid him in the conduct of said case; and that deponent would have moved for a continuance of his said case, if he had been apprised of the condition of his said client.

April 1858.

(Signed,)      GEO. T. BARTLETT.

*Test ;* C. E. F. W. CAMPBELL, *Clerk.*

GEORGIA, Jasper County.

In open Court, comes J. C. McDowell, deponent, who being duly sworn, says, that he was unable from bodily indisposition to attend the Court on Monday last; that deponent believes that his presence was necessary to aid his counsel in his defence; that deponent endeavored to procure a letter to his

counsel informing him of his condition, but failed to do so, from the inclemency of the weather.

April 28, 1858.

        (Signed,)      JOEL C. McDOWELL.

*Attested:* C. E. F. W. CAMPBELL, *Clerk.*

        *Plaintiff filed the following affidavit.*

               GEORGIA, Jasper County.

In open Court, comes T. C. Preston, who being duly sworn, says, that on last Tuesday night or Wednesday morning, at deponent's house, he asked J. C. McDowell, why he reckoned Wm. Malone's witnesses were not present when his case was called, that they were notified to be there, McDowell said, that he reckoned they were like he, McDowell was, that he McDowell, stayed at home believing that his case would not be called. Deponent does not know whether he, McDowell said that he was unable to come to town; does not recollect that he said it; he might have said, that he was unable to come to town; does not recollect his saying it.

        (Signed,)      T. C. PRESTON.

*Attest ;* C. E. F. W. CAMPBELL, *Clerk.*

The Court refused the motion for a new trial, and defendant excepted.

GEO. T. BARTLETT, for plaintiff in error.

ANDERSON, *contra.*

*By the Court.*—LUMPKIN J. delivering the opinion.

We are not prepared to say, that this is a very strong case, upon any of the grounds taken in the bill of exceptions. Still upon a review of the whole of them, we have concluded to send back this case for a re-hearing, unless the plaintiff see fit to write off $200 from the judgment, that be-

ing the amount of depreciation in the value of the negro, established by the proof.

The testimony as to the unsoundness of the woman Kesiah, at the time of the sale, and the knowledge of that fact by Mr. Preston, although somewhat conflicting, predominates in favor of the defendant. That she was laboring under rheumatism in the leg and hip, we think pretty clear. Several persons had hired her, and after keeping her a short time, sent her home, on account of her ailments. From this, it may be fairly inferred, that a knowledge of her situation was necessarily communicated to her owner. One witness, Mrs. Elizabeth Davidson, swears positively, not only as to the unsoundness, but that she informed Mr. Preston of the fact.

On the other hand, Mr. McDowell made no offer to rescind the contract. He has hired out the woman this year for forty-five dollars, a fair price, considering that she cost only $435. Still it was for a preacher, and possibly for inn-door service. The exposure consequent upon the employment of a rheumatic invalid, has much to do with the disease. It is not always, nor usually perhaps a continuous disorder, unless it has become inveterately chronic. It often, to my own knowledge, like birds of passage, appears and disappears at certain seasons; and is a complaint at all times much under the influence of the weather.

Was it right to permit the testimony of Mrs. Davidson, to be discredited or even weakened by proving that she was in the habit of taking laudanum? without going further and showing, that her mind was impaired by it, or was at least, under the influence of it at the time she testified? We think not. And this perhaps, was the main injustice which the defendant suffered during the trial. Her evidence was very material, being the only witness as we have seen, who brought home notice directly to Preston of the unsoundness of the girl.

As to the admissibility of the proof, as to what transpired

between Preston and Smith, we think the Court committed no error in letting this proof in. The examination of Smith, was not pushed far enough. But that was not the fault of the Court. If his instructions by Preston to bid for him, were unlimited as to price, it is a circumstance certainly to relieve Preston from the conclusion, that the health of the slave was seriously damaged, and that he knew it. If on the other hand, his agent was restricted to a low sum, it would operate the other way. As far as it went, it was competent proof.

As to the only remaining ground taken in the motion for a new trial; that the defendant was sick, and unable to attend Court, and was prevented from conveying intelligence of that fact to his counsel, on account of the weather and high water, we forbear to express any opinion. It will not occur again in this case. Some of the Court think it sufficient as it stood; as it would have been a good showing for a continuance, could the facts have been known in advance of the trial. Other members are of the opinion, that the showing should have gone further; and that the party should have stated in his affidavit, as he would be required to do in a bill of review for a new trial, what injury he sustained by reason of his absence; as for instance, that certain objectionable persons were selected to try the cause; or that certain testimony could have been elicited, unknown to the attorney; or that testimony introduced against the party, might have been rebutted or explained, either by a more thorough examination of the party's witnesses; a more searching cross-examination of his adversarie's, or the introduction of other proof.

We leave this point here, merely adding, that in this and all such cases, the showing had better be full, as by curtailing, the application may be defeated.

Judgment reversed.