[No. 11563.  Department One.  February 28, 1914.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANK SHEA, *Appellant*.[1]

EXTORTION—EVIDENCE—SUFFICIENCY.  A conviction of grafting, by asking or receiving compensation or a reward in consideration of influencing a public officer to refuse to perform or neglect any official duty, within Rem. & Bal. Code, § 2333, is sustained where it appears that the defendant, a campaign worker for the reelection of the mayor, demanded of the prosecuting witness a contribution of $25 for the mayor's campaign fund on the promise not to molest or arrest him, he having allowed gambling in his place of business; the mayor having the appointment of the city marshal, the police, and police justice, whose duty it is to enforce the ordinances.

CRIMINAL LAW—TRIAL—USE OF INTERPRETER—DISCRETION.  The employment of an interpreter for a witness, who understood English sufficiently to make a corrupt agreement, is largely within the discretion of the trial court, which will not be disturbed except for abuse.

WITNESSES—EXAMINATION—CROSS-EXAMINATION.  It is not error on cross-examination to sustain objection to a question assuming facts not in evidence, and which the witness had denied.

CRIMINAL LAW—EVIDENCE—OTHER CRIMES—COURSE OF CONDUCT. Upon a prosecution for grafting, by soliciting contributions to a campaign fund for the reelection of a mayor, in consideration of an agreement not to molest or arrest a violator of certain ordinances, evidence of like solicitations and promises in the case of other violators of the ordinances is admissible to show a scheme, system or course of conduct implying a guilty intention.

CRIMINAL LAW—APPEAL—HARMLESS ERROR.  Upon a prosecution for grafting, by soliciting contributions to a campaign fund for the reelection of a mayor, in consideration of an agreement not to molest or arrest a violator of certain ordinances, the admission of evidence of like solicitations without any unlawful promise, is harmless error, where the jury were instructed that such a solicitation would be an innocent act when not induced by any corrupt promise.

CRIMINAL LAW — TRIAL — INSTRUCTIONS.  An instruction which, standing alone, may be confusing, is not ground for reversal, where, taken in connection with other instructions, it could not have confused the jury.

[1]Reported in 139 Pac. 203.

SAME. A concluding instruction to the jury telling them to acquit, if they have a conscientious belief that the accused is not guilty, and to convict, if satisfied of his guilt beyond a reasonable doubt, cannot be urged as prejudicial error, where the jury had been fully instructed that every element of the crime must be proven beyond a reasonable doubt in order to convict, and the instructions as a whole were clear and full.

Appeal from a judgment of the superior court for Kitsap county, French, J., entered April 5, 1913, upon a trial and conviction of grafting. Affirmed.

*Buck, Benson & Knutson, Garland & McLane,* and *Yakey & Sutton,* for appellant.

*F. W. Moore* and *R. M. Morford,* for respondent.

ELLIS, J.—The defendant was convicted of the crime of grafting. The information charged him, in effect, with obtaining from one Den Kee, a Chinaman, the sum of $25, upon a promise that the defendant would influence the mayor and city marshal of the city of Bremerton not to arrest him for past and future acts of gambling. We deem it unnecessary to set out the information at length, since no question is raised as to its sufficiency. At the trial, it was admitted that Paul Mehner was mayor of the city of Bremerton, and that H. Gibason was city marshal. It appeared from the evidence that the prosecuting witness knew that these persons occupied these offices respectively. The mayor was, at the time in question, standing for reelection. It also appeared that the mayor was conducting a tailoring establishment in which defendant was employed as cutter and designer, and that the defendant was a member of the mayor's campaign committee, actively seeking to secure his reelection. The further evidence will be pointed out in the discussion of the assignments of error. At the close of the evidence, the court overruled the defendant's motion for a directed verdict, the jury returned a verdict of guilty, the defendant's motions for a new trial and in arrest of judgment were overruled, the court pronounced sentence, and the defendant appealed.

I.  It is first contended that the court erred in overruling appellant's motion for a directed verdict.  The appellant claims that the evidence was not sufficient to prove the crime charged.  The statute, Rem. & Bal. Code, § 2333 (P. C. 135 § 161), under which the information was drawn, provides, in substance, that every person who shall receive or ask for any compensation or reward upon the representation that he can, and in consideration that he shall, attempt, directly or indirectly, to influence any public officer to refuse or neglect or defer the performance of any official duty unless it be clearly understood and agreed in good faith between the parties on both sides that no means or influence shall be employed except in explanation or argument upon the merits, shall be guilty of a gross misdemeanor.

There was evidence tending to show that the prosecuting witness had allowed gambling to be carried on in his laundry. His testimony was to the effect that the appellant came to him, presented a business card of the mayor, with the appellant's name thereon as cutter and designer, and demanded $25 for the mayor's campaign fund, stating that, if the prosecuting witness paid the money, he would have no trouble. On the first visit, the prosecuting witness refused to pay the money, claiming that he did not have it.  The same result followed a second visit, at which time the prosecuting witness testified that the appellant threatened: "If I didn't pay that $25, he would make me some trouble."  Upon a third visit, the appellant brought with him one Diamond, known by the prosecuting witness to be a gambler.  As to his part in the conversation, the prosecuting witness testified: "Mr. Diamond says he pay $25, and, Den Kee, you must pay $25, Mr. Diamond say that."  As to the appellant's part in the conversation on this visit, the prosecuting witness testified: "He said first thing he come in and ask for money, if you don't pay that $25, I may make you trouble, you may spend more than $500."  And again, "Said, came in to get $25, no get $25, I make you trouble, you pay

$25 nobody make you trouble." And again, "I pay $25; he said, Den Kee, you no pay $25 I make you pay $500." The prosecuting witness also testified that on one of these visits—it does not clearly appear which—the appellant said: "If you pay me this $25 I will not arrest you." On the appellant's third visit, the prosecuting witness paid him the $25 in gold. None of this evidence was controverted, and we think it clearly tended to establish the fact that the prosecuting witness paid this money on a promise of protection to be secured through the appellant's relations with the mayor. If this testimony is believed, it is capable of no other construction.

But it is urged that, even conceding the truth of this evidence, it is insufficient to prove the crime charged because it was not an official duty of the mayor to arrest or cause the arrest of any person. The city of Bremerton is a city of the third class. The statute defining the duties of the mayor of a city of the third class, Rem. & Bal. Code, § 7695 (P. C. 77 § 347), does not directly charge that officer with the duty of enforcing the ordinances of the city or of causing the arrest of persons violating them; but another provision, Rem. & Bal. Code, § 7673 (P. C. 77 § 299), imposes upon the mayor the appointment of the city marshal and the police justice and all such policemen as the council shall provide for by ordinance. It is clear, therefore, that the mayor, through his control over the appointment, not only of the city marshal and the policemen, but also of the police justice, can effectively control the matter of arrests and prosecutions. Moreover, it is a well known fact that the mayor can, and actually does, fix the policy of the executive and administrative branch of the municipal government, and that this fact is a thing which is chiefly taken into consideration by the electors in their selection of the mayor. There is probably no single individual connected with the city government of cities of the third or of any other class who would ordinarily have the same actual influence in the enforcement

or nonenforcement of the laws as the mayor himself. We think, therefore, that there was evidence tending to establish every element of the crime charged; and in such cases we have often held that, where the trial court has refused a new trial, we cannot interfere with the verdict.

II. It is asserted that the court erred in allowing the witness Den Kee to testify through an interpreter, the argument being that, if the witness understood the English language sufficiently to make the corrupt agreement with the appellant, then he understood it sufficiently to testify to the occurrence. We find no merit in this argument. Counsel for both the state and appellant and also the court examined the prosecuting witness as to his ability to speak and understand the English language. The court was satisfied, as are we, that it was a case in which the employment of an interpreter was necessary. The matter was one largely resting in the discretion of the trial court. We cannot say that this discretion was abused.

III. It is next claimed that the court erred in refusing to let it be shown on cross-examination that the prosecuting witness had been arrested for gambling and was offered immunity. As a matter of fact, the record shows that, on cross-examination, counsel for the appellant was permitted to elicit from the prosecuting witness an admission that he had been arrested for. gambling, but the witness denied that he had been promised immunity. The only question to which an objection was sustained in this connection was as follows: "You knew before you came on the witness stand here that if you testified at this trial that they could not do anything more in your trial for gambling, didn't you?" An objection was sustained on the ground "that it assumes facts not in the evidence and not so." We find no error in this.

IV. It is further contended that the court erred in admitting testimony of certain witnesses to the effect that the appellant had solicited contributions from them. The keeper of a poolroom, in which it was apparently admitted gambling

had been conducted, testified that, at about the time in question, the appellant came to his place of business and demanded $25 as a contribution to the mayor's campaign fund, that the witness was promised by the appellant that he would not be bothered if he paid the money, and that the witness paid the appellant $25 upon that promise and a statement by the appellant that they were treating all alike. This evidence falls within the well established exception to the rule excluding evidence as to other criminal acts. It was properly admitted as a circumstance tending to show a scheme, system, or course of conduct implying a guilty intention on the appellant's part in soliciting a like sum from the prosecuting witness, accompanied by a similar promise. The jury was instructed to consider it only for that purpose. 8 Cyc. 684; *State v. Craddick*, 61 Wash. 425, 112 Pac. 491; *State v. Wappenstein*, 67 Wash. 502, 121 Pac. 989; *State v. Hazzard*, 75 Wash. 5, 134 Pac. 514; *People v. Peckens*, 153 N. Y. 576, 47 N. E. 883; *Card v. State*, 109 Ind. 415, 9 N. E. 591; *State v. Lewis*, 96 Iowa 286, 65 N. W. 295; *State v. Ames*, 90 Minn. 183, 96 N. W. 330; *People v. Ruef*, 14 Cal. App. 576, 114 Pac. 48, 54; *Commonwealth v. Stuart*, 207 Mass. 563, 93 N. E. 825.

Two women, keepers of disorderly houses, each testified that, upon the appellant's request, she contributed $25 to the mayor's campaign fund. Neither testified to any promise on the appellant's part to use his influence for protection, but both distinctly denied that any such promise was given. While this evidence was not properly admissible, it was harmless. In view of the court's instruction to the effect that the taking of such a contribution, when not induced by any corrupt promise, would be an innocent act, it is obvious that this testimony was prejudicial rather to the prosecution than to the defense.

V. Claims of error are also predicated upon the giving of several instructions, only two of which require notice after

what we have said of the evidence.   In one of these, the court
told the jury that:

"I instruct you that if the defendant, Frank Shea, asked
for or received the sum of $25 or any other sum whatever,
referred to in the information, for himself or for someone
else, as a compensation, gratuity or reward, for the failure
to arrest or prosecute the said Den Kee for the crime of
gambling, or for allowing gaming in a place conducted by
him, then you will find the defendant guilty as charged in the
information."

This language, when read alone, does not clearly state the
law as applied to the evidence.   So read, it is open to the
criticism that it tended to confuse the crime charged with
the crime of accepting a bribe.   Taken in context, however,
it could have no such tendency.   In an instruction immediate-
ly preceding this, the court had clearly and comprehensively
instructed the jury as to the essential elements of the crime
of grafting and had impressively charged the jury that the
burden was upon the state to prove beyond all reasonable
doubt each of these elements, among them that Den Kee had
violated the city ordinance against gambling, and that, be-
fore a conviction could be had, the jury must find:

"That the defendant, Frank Shea, in the county of Kitsap
and state of Washington, did, on or about the first day of
December, 1912, ask for or receive a compensation, gratuity
or reward in the sum of $25 or some other sum, upon the rep-
resentation then and there made by the said Frank Shea, to
the said Den Kee, that he, the said Frank Shea, should or
would influence or attempt to influence the said Paul Mehner
and H. Gibason, as said officers, respectively, to refuse, ne-
glect or defer the arrest of the said Den Kee for the violation
of the said ordinances aforesaid, and if, after hearing all the
evidence in this case, you should entertain a reasonable doubt
concerning any one of these points, it would be your duty
to find the defendant not guilty.   On the other hand, if you
believe on your oaths that the state has proven all the ele-
ments above named beyond a reasonable doubt, then you
should find the defendant guilty."

In addition to this, the court also told the jury that:

"If from the evidence you find that the defendant asked or received money from Den Kee for election campaign purposes, or any other purposes, without having represented that he could or would directly or indirectly, or in consideration of said payment, that he could or would attempt to influence Paul Mehner, mayor of the city of Bremerton, not to arrest or prosecute said Den Kee for having violated, or violate in the future, the ordinances of the city of Bremerton against gambling or keeping a gambling house, where gambling is permitted, then you will find the defendant not guilty."

The instructions which we have quoted make it too plain for cavil that the language complained of could not have had the confusing effect now urged.

Appellant also bases a claim of error upon the sentence which we have italicized in the following instruction:

"It becomes my final duty in this case to remind you in this instruction that each of you have taken a solemn oath that you will try the issues between the state and the defendant upon the evidence in the trial and upon the law as given to you by the court. Now, you have but one duty to perform, which is to determine as a matter of fact, under the law, as the court has given it to you, whether or not the defendant is guilty of the offense charged. You have nothing to do with the punishment to be inflicted in consequence of a violation of law. Neither is it your province to grant clemency or mercy. There are other sworn officers upon whom falls this serious obligation. You are to be wholly unaffected by any feelings of prejudice; uninfluenced by any emotions of sympathy; untrammeled by any anxiety or fear as to punishment. *If you conscientiously believe on your oaths, under the evidence and the law, that the defendant is not guilty, you should acquit him.* On the other hand, if you are satisfied of guilt beyond a reasonable doubt, you should convict him."

It is contended that this sentence constituted reversible error in that it substituted a "conscientious belief" for "belief beyond a reasonable doubt." The court had, as we have seen, already given an instruction that, in order to have a

conviction, every element of the crime must be proved beyond a reasonable doubt. It had also defined reasonable doubt, in terms tacitly conceded as faultless. The sentence complained of is followed by another to the effect that the jury should convict if satisfied of appellant's guilt *beyond a reasonable doubt*. We have so often held that mere isolated excerpts from instructions which, as a whole, clearly state the law, cannot be successfully urged as reversible error, that a citation to the cases would be useless to those who follow our decisions and profitless to those who do not. The instructions, taken as a whole, clearly and fully stated every phase of the law applicable to the evidence. The appellant has had a fair trial. We cannot say that the court, in refusing a new trial, abused its discretion.

The judgment is affirmed.

CROW, C. J., MAIN, GOSE, and CHADWICK, JJ., concur.