[No. 13066. Department One. December 23, 1915.]

THE STATE OF WASHINGTON, *Respondent*, v. PAUL SCHUMAN, *Appellant*.[1]

PROSTITUTION—INDICTMENT—SUFFICIENCY—ACCEPTING EARNINGS OF PROSTITUTE. An information charging, in the language of the statute, the accused with wilfully and unlawfully accepting the earnings of one P. W. then and there being a common prostitute, sufficiently charges the offense of accepting the earnings of a prostitute without stating the specific earnings accepted, within the requirements of Rem. & Bal. Code, § 2055, requiring a statement of the acts constituting the offense, in ordinary concise language, so as to enable a person of common understanding to know what was intended.

INDICTMENT AND INFORMATION—"WILFULLY AND UNLAWFULLY." A charge that an offense was committed "wilfully and unlawfully" sufficiently charges knowledge and evil intent.

PROSTITUTION—EVIDENCE—SUFFICIENCY. In a prosecution for accepting the earnings of a prostitute, evidence that the money was paid to defendant, a policeman, solely in consideration of the promise that she be permitted to frequent a certain cafe and solicit without molestation, sufficiently shows that the money was paid to aid, assist or abet the prostitution of the prosecuting witness.

SAME—EVIDENCE—SUFFICIENCY. Evidence that the money was given to the person designated by the defendant sufficiently shows an acceptance by him.

CRIMINAL LAW—EVIDENCE—WEIGHT. Although all the state's witnesses were from the underworld and the principal witness was a thief, their credibility was for the jury.

CRIMINAL LAW—EVIDENCE—OTHER OFFENSES. In a prosecution for accepting the earnings of a prostitute, in which the prosecuting witness testified that, under agreement with the accused, a policeman, she paid to a designated person five dollars a week for protection in soliciting at a certain cafe, evidence of other prostitutes as to identical arrangements with them is not inadmissible as constituting evidence of distinct offenses, since it tends to prove a consistent general system or design evidencing a criminal intent and purpose.

CRIMINAL LAW—APPEAL—HARMLESS ERROR. Error in refusing to allow a reputation witness to state what the reputation of the accused was as to being "an honest good citizen" is cured by immediately allowing the witness to state what his reputation was in the community for "good citizenship."

[1]Reported in 153 Pac. 1084.

CRIMINAL LAW—EVIDENCE—REPUTATION. Upon the prosecution of a policeman for accepting the earnings of a prostitute, it is not error to refuse to allow a reputation witness to state what the accused's reputation was as to being a "faithful police officer," as the same was not relevant to the nature of the offense charged.

SAME. In a prosecution of a police officer for accepting the earnings of a prostitute in which the veracity of the accused had not been called in question, evidence as to his reputation for truth and veracity is properly excluded.

WITNESSES—CROSS-EXAMINATION—CONCLUSIVENESS—IMPEACHMENT. Where witnesses for the prosecution on cross-examination denied that they were users of cocaine or other drugs, they cannot be impeached by showing that they were, since the matter is collateral.

WITNESSES— CROSS-EXAMINATION — IMPEACHMENT — ADMISSIONS— FOUNDATION. A witness cannot be impeached by showing an admission contrary to the evidence given on cross-examination, where no foundation was laid by directing attention to the time, place, and circumstance of such admission.

SAME — CREDIBILITY — IMPEACHMENT — EXPERT EVIDENCE. Where there was no evidence that witnesses were users of cocaine or other drugs, expert evidence that the use of such drugs would affect their credibility is inadmissible, even if there was a suspicion that they were such users, in the absence of evidence of the mental state or condition either at the time of the transaction or while testifying.

CRIMINAL LAW—TRIAL—COMMENT ON EVIDENCE. It is not an unlawful comment on the evidence for the court, in excluding expert evidence, to remark that there was no evidence in the case on which to base its admission, where such was the fact.

CRIMINAL LAW—APPEAL—HARMLESS ERROR—INSTRUCTIONS. In a prosecution for accepting the earnings of a prostitute, through payments deposited with the accused's designated agent, in which the evidence showed that the accused was a principal in the matter, it is not prejudicial error that the court gave an instruction authorizing a conviction as an accessory, if it was found that he aided or abetted the agent in receiving the money.

WITNESSES—EXAMINATION—RECALLING—DISCRETION. It is not an abuse of discretion to refuse to recall a witness in order to ask an impeaching question as to a purely collateral matter.

Appeal from a judgment of the superior court for King county, Smith, J., entered April 3, 1915, upon a trial and conviction of accepting the earnings of a prostitute. Affirmed.

*John F. Dore* and *Robert Welch*, for appellant.

*Alfred H. Lundin* and *Joseph A. Barto*, for respondent.

ELLIS, J.—The defendant, Schuman, a patrolman on the police force of the city of Seattle, was accused jointly with one Shea in an information charging that:

"They, said Charles Shea and Paul Schuman, and each of them, in the county of King, state of Washington, on the 8th day of February, 1915, did then and there wilfully, unlawfully and feloniously accept the earnings of one Pearl Williams, she, said Pearl Williams, then and there being a common prostitute;"

He demanded and was accorded a separate trial. The prosecuting witness, Pearl Williams, testified in substance, that she was a common prostitute; that she had been in the habit of frequenting the American Cafe, which was on the appellant's beat, and there soliciting men to accompany her to various hotels and practice prostitution; that about ten months before the trial, the defendant called her into a box in another cafe and informed her that she could not make any money unless he made some also, and that he would have to have five dollars a week; that a night or two afterwards he told her to put the money in an envelope, write on it "Paul," and leave it at a cigar stand with either one of two men, whom he described as the big blond fellow and the dark fellow, who, as she afterwards learned, were Shea and his partner; that the purpose of paying the money was to enable her to frequent the American Cafe in pursuit of her calling without fear of molestation or arrest by the defendant; that, pursuant to this agreement, she left $5 at the cigar stand each week for some weeks; that the last time she left money for the defendant was on February 8, 1915, the date charged in the information. The defendant denied these things *in toto*, and there was much evidence tending to discredit the woman's story. There was also much evidence tending to corroborate it. The evidence, so far as necessary, will be discussed in considering the several assignments of error.

The jury found the defendant guilty. From the judgment of conviction and sentence, he appeals.

The appellant claims: (1) That the information was insufficient to charge a crime; (2) That the evidence was insufficient to sustain the verdict; (3) That evidence as to other offenses was improperly admitted; (4) That evidence as to appellant's character for truth, honesty and faithful official conduct was improperly rejected; (5) That expert testimony as to the effect of the habitual use of cocaine upon the user's veracity was improperly excluded; (6) That the court improperly commented upon the evidence in the presence of the jury; (7) That the court refused to give a proper instruction which was requested; (8) That the court gave an improper instruction; (9) That the court abused its discretion in refusing permission to recall a witness in order to lay the foundation for certain impeaching evidence.

I. It is first urged that the information is insufficient in that it impinges the mandate of Rem. & Bal. Code, § 2055 (P. C. 135 § 1016), which requires a "statement of the acts constituting the offense, in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." It is admitted that the information is identical with that upheld by this court in *State v. Columbus*, 74 Wash. 290, 133 Pac. 455; but it is insisted that the *Columbus* case is inconsistent with the rules announced in *State v. Gifford*, 19 Wash. 464, 53 Pac. 709; *State v. Dodd*, 84 Wash. 436, 147 Pac. 9; *State v. McFadden*, 48 Wash. 259, 93 Pac. 414, 14 L. R. A. (N. S.) 1140, and *State v. Muller*, 80 Wash. 368, 141 Pac. 910. In the recent case of *State v. Crane*, 88 Wash. 210, 152 Pac. 989, the same argument was made as that here advanced, but we there again sustained an information couched in practically the same terms as that here and in the *Columbus* case. Inasmuch as it is still insistently urged that the *Columbus* case runs counter to the decisions above cited, we deem it expedient, briefly as it may be, to notice those cases.

In *State v. Gifford, supra,* the information specified the manner of the commission of the crime and was held sufficient. The testimony, however, showed that the appellant was an accessory before the fact—that he acted as the procurer. Since this was not charged, it was held that there was a failure of proof of the crime as charged. Here, however, the proof was that the appellant accepted the earnings of a prostitute by his agent Shea. He was charged as a principal and the proof showed him a principal.

The information in *State v. Dodd, supra,* was the antithesis of that found in the case before us. There the information charged the commission of three separate and distinct acts prohibited by subd. 1 of Rem. & Bal. Code, § 2440 (P. C. 135 § 375). It was held bad under Rem. & Bal. Code, § 2059 (P. C. 135 § 1023), which requires that the information "must charge but one crime, and in one form only." In the *Columbus* case and in the case here, the crime charged was under subd. 5 of the same § 2440, which also prohibits three distinct acts. The information, however, was just the converse of that in the *Dodd* case. It charged the commission of only one of the acts specified in this subdivision, thus avoiding the specific defect found in the information in the *Dodd* case.

In *State v. McFadden, supra,* the accused was charged with causing the death of a child by counseling the withholding of certain kinds of food, but failed to state what other food he prescribed, though implying that he did give other directions as to food. The distinction between that case and this is self-evident.

It is also insisted that the informations here and in the *Columbus* case were fatally defective in that they failed to state the specific earnings accepted. It is argued that "earnings" is a generic term and that, under the rule stated in *State v. Muller, supra,* the information should have descended to the particular and stated whether money, and if

so, how much money was accepted. The *Muller* case involved a charge of bringing into a dry unit of Island county intoxicating liquors in prohibited quantities. As pointed out in the opinion, there were both wet and dry units in that county, and the information did not allege into what particular unit the liquor was brought. We held that to charge a crime it should have designated the unit, and that the statute prescribing the essentials of the information in such cases carries that necessary implication. Rem. & Bal. Code, § 6310 (P. C. 267 § 65). The difference from the case here is plain. The statute there involved provides that it shall not be necessary to state in the information the particular kind of liquor, though it is obvious that "intoxicating liquors" is as generic a term as "earnings of a prostitute." We see no reason why we should adopt a more technical rule as to charging the crime here in question than the legislature prescribed for charging the crime there involved.

It is further asserted that the information here failed to charge that the appellant knew that the earnings accepted were the proceeds of prostitution. It does, however, charge that he "wilfully, unlawfully and feloniously" accepted the earnings of a common prostitute. This, of course, means the earnings of a common prostitute as such, not her earnings as a cook, a laundress or a seamstress, as suggested. *State v. Crane, supra.* The words "wilfully and unlawfully" sufficiently charge knowledge and evil intent. *State v. Muller, supra; State v. Zenner,* 35 Wash. 249, 77 Pac. 191; *State v. Barker,* 43 Wash. 69, 86 Pac. 387.

The information charges the crime in the language of the statute so far as applicable to the facts, and in words well calculated "to enable a person of common understanding to know what was intended." It is sufficient.

II. It is claimed that the evidence was insufficient to sustain the verdict, in that it failed to show that the money was paid or received with intent to aid, assist or abet the prostitution of the prosecuting witness. The claim is unfounded.

The evidence, if believed, was sufficient to show that the money was paid solely in consideration of appellant's promise that the woman would be permitted to frequent the American Cafe and there solicit consorts in prostitution without molestation. If this protection was not aiding, assisting and abetting, it is difficult to conceive of conduct short of actual panderage that would be. Equally unfounded is the claim that there was no evidence of an acceptance. The money was paid in the manner and to the person designated by the appellant. The acceptance was as complete as if it had been paid to the appellant in person.

Though the state's witnesses were all from the underworld and its principal witness was shown to be a thief, the credibility of their testimony was for the jury. On that point the verdict is conclusive.

III. Three other women, all confessed prostitutes, were permitted to testify, over appellant's objection, that, at about the time charged in the information and by arrangement with the appellant, they had paid for permission to frequent the same cafe in aid of their calling by leaving money in the same sums and in the same place for the appellant as testified to by the prosecuting witness. It is urged that this was prejudicial error, in that the evidence related to independent offenses. It is, of course, a general rule that evidence of the commission of a separate and distinct crime is inadmissible to aid the conviction of a defendant for the crime charged. There are, however, exceptions to this rule as thoroughly established as the rule itself. Where the purpose is to show a system or general design from which a criminal intent or purpose may be inferred in the commission of the particular act charged, collateral offenses of the same character and perpetrated in the same way, though not otherwise connected, can always be put in evidence as tending to establish the system or design. The logical basis of this exception to the general rule of exclusion is thus admirably expressed by Wharton:

"When the object is to show system, subsequent as well as prior collateral offenses can be put in evidence, and from such system identity or intent can often be shown. The question is one of induction, and the larger the number of consistent facts the more complete the induction is. The time of the collateral facts is immaterial, provided they are close enough together to indicate that they are a part of the system. In order to prove purpose and design, evidence of system is relevant; and in order to prove system, collateral and isolated offenses are admissible from which system may be inferred." 1 Wharton, Criminal Evidence (10th ed.), p. 146, § 39.

This exception has been recognized and adopted as a basis of decision by this court in many cases. *State v. Pittam,* 32 Wash. 137, 72 Pac. 1042; *State v. Craddick,* 61 Wash. 425, 112 Pac. 491; *State v. Downer,* 68 Wash. 672, 123 Pac. 1073, 43 L. R. A. (N. S.) 774; *State v. Wappenstein,* 67 Wash. 502, 121 Pac. 989; *State v. Hazzard,* 75 Wash. 5, 134 Pac. 514; *State v. Shea,* 78 Wash. 342, 139 Pac. 203. The similarity of the other offenses with that testified to by the prosecuting witness, the identity of the agreement with the appellant under which the money was paid by other prostitutes, and the identity in manner, place and amount of the payments, all had a direct tendency to prove a consistent general system, scheme or design evidencing a criminal intent and purpose. In this phase, the case here cannot be distinguished from the *Shea* case in which a conviction for grafting, through a promise to protect a gambler, was sustained. Holding evidence of other similar acts admissible, we said:

"This evidence falls within the well established exception to the rule excluding evidence as to other criminal acts. It was properly admitted as a circumstance tending to show a scheme, system, or course of conduct implying a guilty intention on the appellant's part in soliciting a like sum from the prosecuting witness, accompanied by a similar promise."

The evidence here in question was properly admitted.

IV. A witness for the defense who had been a member of the Seattle police commission, having testified that he was

well acquainted with the appellant's reputation, was asked if he knew what his reputation was in the community "for being an honest and good citizen." He answered in the affirmative and the court at first refused to permit him to state what that reputation was. It is claimed that this was error. Assuming that it was, the wrong was at once corrected. The same witness was immediately asked, "Do you know the reputation of the defendant Paul Schuman in this community for good citizenship?" and answered, "Yes, sir." He was then asked, "What is it?" and answered, "It is good." Obviously, the second question covered the first and cured any error committed in the exclusion of the first.

The court also excluded the testimony of this and another witness as to the appellant's reputation "for being a faithful police officer" and "for truth and veracity." This was not error. As to the first question, it is sufficient to observe that the appellant was not charged with malfeasance in office or for grafting as such, both of which are distinct crimes from that of accepting the earnings of a prostitute, with which he was charged. His general reputation as a police officer was, therefore, not in issue. The rule is thus stated by Wharton:

"Again, the proof of good character to be relevant must be confined to the nature of the offense under charge and bear some pertinent analogy and reference to it. For instance, on charge of adultery, it is wholly irrelevant to inquire as to the accused's honesty and integrity; or on a charge of high treason, it would be absurd to elicit evidence tending to show honesty and uprightness in private business." 1 Wharton, Criminal Evidence (10th ed.), p. 241, § 59.

Touching the second question, the record shows that the state had not introduced any evidence impeaching the appellant's character for truth and veracity. A witness may be impeached by showing that he has a bad reputation for truth and veracity, and this may be met by proof that his reputation in that respect is good. But one cannot bolster his own

testimony by showing that his reputation for truth is good until that reputation has been questioned. The oath of compurgators as an independent defense is obsolete. 1 Bouvier, Law Dictionary, p. 577; 3 Blackstone, Commentaries, 341. In the absence of any attack upon his reputation as an officer or upon his character for truth, the evidence of his general good character as a citizen, or as to the particular trait called in question by the charge against him, was all that the appellant had the right to offer. 3 Ency. of Evidence, pp. 20, 21; *State v. Surry*, 23 Wash. 655, 63 Pac. 557. That evidence, as we have seen, was admitted.

V. On cross-examination of the prosecuting witness, she was asked whether she used cocaine or morphine or any drugs. The question was met by a flat denial. The same question was asked of each of the other three women who testified that they had paid money to the appellant for a similar protection to that testified to by the prosecuting witness. All of them denied the use of cocaine or any other drugs, save one, who admitted that it was administered to her upon one occasion while in the hospital undergoing an operation. When the appellant had entered upon his defense, he called certain police officers to prove that the prosecuting witness was a user of cocaine or other deleterious drugs. None of them was able to state the fact of his own knowledge. The appellant offered to prove by one of them that the prosecuting witness had admitted to him that she was a user of cocaine. This was excluded, and we think properly so for two reasons. In the first place, the whole matter was collateral and was first gone into on cross-examination of the prosecuting witness. As said in *State v. Carpenter*, 32 Wash. 254, 73 Pac. 357:

"No rule is better settled than the one that a cross-examining party is concluded by the answer which a witness makes to a question pertaining to a collateral matter. To such answers no contradiction is allowed, even for the purpose of impeaching the witness."

See, also, *State v. Stone*, 66 Wash. 625, 120 Pac. 76; *Wharton v. Tacoma Fir Door Co.*, 58 Wash. 124, 107 Pac. 1057.

In the second place, even viewing the matter as so related to the state's case in chief as to be subject to impeachment though first gone into on cross-examination, no proper foundation was laid for the impeaching question. The prosecuting witness was never asked whether she had at any time made such an admission. It is elementary that admissions are not admissible to impeach a witness whose attention has never been called to the time, place and circumstance of the alleged admission offered in impeachment. *State v. Stone, supra.*

Another police officer testified that he knew that the prosecuting witness and one of the other women were habitual users of cocaine or other drugs. When further questioned, he admitted that he knew this only by hearsay and added, "I never knew." Thereafter the appellant sought to prove by two physicians, as experts, that a person who is a user of cocaine loses the power to distinguish truth from falsehood and that his word is unreliable. The court excluded this testimony, remarking:

"There is no such testimony here yet, to establish that any one of these girls was an habitual user of cocaine. There is testimony of one of the witnesses only that something was said as to one of them using cocaine."

It is strenuously urged that the rejection of this expert testimony was error. We think, however, that the court's ruling was correct. Even conceding that there was evidence sufficient to raise a suspicion that the witnesses in question were users of cocaine, there was no evidence that they were habitual users of that or of any other drug, nor was there any evidence that any of them was under the influence of any such drug at the time of her examination. What we conceive to be the correct rule is thus stated by Wharton:

"Evidence of the use of opium cannot be introduced to impair credit, unless it be shown that the witness was under the influence of opium when examined, or that his powers of observation or recollection were affected by the habit." 1 Wharton, Criminal Evidence (10th ed.), p. 785, § 384a, and again:

"But habits (*e. g.*, use of narcotics) likely to impair memory cannot be put in evidence. Such proof, aside from other objections, is secondary. Actual decay or derangement may be proved; not habits likely to have such an effect." 1 Wharton, Criminal Evidence (10th ed.), p. 777, § 378.

There is no claim that any of these witnesses was under the influence of drugs when she testified, nor was there any evidence that either of the physicians had examined any of these witnesses for the purpose of determining her mental state as one of decay or derangement as resulting from such use. See, *McDowell v. Preston*, 26 Ga. 528; *Alleman v. Stepp*, 52 Iowa 626, 3 N. W. 636, 35 Am. Rep. 288. The case of *State v. Concannon*, 25 Wash. 327, 65 Pac. 534, is distinguishable on the facts. There the witnesses whose credibility was attacked were not only positively proven to be habitual users of drugs, but were given the drug while on the witness stand in order to sustain them during the examination. That case clearly fell within the rule as stated by Wharton. The same is true of the case of *State v. White*, 10 Wash. 611, 39 Pac. 160, 41 Pac. 442. In that case the witness was not only an admitted user of opium, but admitted he was under the influence of the drug both at the time of the occurrence of which he testified and when he was on the witness stand. We have been cited to no case, and have found none, which would sustain the admission of expert testimony as to the credibility of witnesses where, as here, it was neither admitted nor proven that they were habitual users of drugs, or were under the influence of drugs either at the time of the transaction concerning which they testified or at the time of testifying.

VI.   The claim that the court improperly commented upon the evidence in the presence of the jury is founded upon the court's remark in excluding the expert testimony above referred to.   It is urged that this was an improper comment upon the testimony of the police officers.   We find no merit in this contention.   The remark made was necessary to an intelligent ruling upon the offered testimony.   It was in no just sense a comment upon the evidence.   *State v. Surry*, 23 Wash. 655, 63 Pac. 557.

VII.   Error is assigned on the refusal of the court to instruct the jury to the effect that, if it found from the evidence that any witness used cocaine or other deleterious drugs, then, as a matter of law, the jury should consider that fact in determining the credibility of such witness.   This was not error.   As we have seen, there was no sufficient foundation for the instruction in the evidence.

VIII.   The court instructed the jury that:

"In order to convict, the state must prove beyond a reasonable doubt the following elements: (1) That the girl, Pearl Williams, was a common prostitute, that is, a woman who indulged in promiscuous sexual intercourse with men for money. (2) That at some time on or about February 8, 1915, in this county and state, either the defendant himself accepted from her some money without any lawful consideration therefor, or that the defendant advised, aided and abetted Charles Shea who did accept from her some money without any lawful consideration therefor.   (3) That said money had been earned by her in the practice of prostitution."

It is argued that this instruction was erroneous in that it permitted the jury to convict the appellant as an accessory while the information charged him as a principal.   In support of this claim, appellant cites *State v. Gifford, supra*, *State v. Morgan*, 21 Wash. 355, 58 Pac. 215, and *Everett v. Simmons*, 86 Wash. 276, 150 Pac. 414.   Though technically incorrect, this instruction, in view of the evidence, was not prejudicial.   If Shea received the money, then, under the evidence, he received it as the appellant's agent and not

otherwise. The appellant was, therefore, guilty as a principal, even if Shea did not know what was in the envelope or what was the consideration for the payment, or that the woman was a prostitute. The instruction, therefore, was more favorable to the appellant than the evidence warranted, since it required the state to establish either that the appellant himself accepted the money or advised, aided and abetted Shea in accepting it. The proof made the appellant the principal and not an accessory before the fact, regardless of Shea's knowledge in the premises. This case, therefore, presents the exact converse of the situation found in the *Gifford, Morgan* and *Simmons* cases. In those cases, the accused was charged as a principal and the evidence showed him an accessory. Here, as we have seen, the appellant was charged as a principal and the evidence showed him to be the principal. There was no evidence tending to show that he was a mere accessory. The instructions in the cases referred to, based on an antithetical state of evidence, and hence prejudicial there, could be prejudicial in no way as applied to the evidence here.

IX. Finally, it is urged that the court abused its discretion in refusing to recall the witness Evelyn Sinclair in order to ask, as a foundation for her impeachment, whether she had not threatened to make a "frame up" against appellant. The proposed questions were in no sense connected with the main charge and were purely impeaching in their character. It is the general rule that the recalling of a witness for further cross-examination is a matter largely resting in the discretion of the trial court. Where the proposed question, as here, relates to a matter purely collateral, there is no abuse of discretion in the refusal to recall the witness. Had there been any evidence of a conspiracy among the women, a different case would be presented. The case of *State v. Jones*, 80 Wash. 588, 142 Pac. 35, relied upon by appellant in this connection, is not apposite. There the evidence for which it was desired to recall the witness had a

direct relation to the crime charged and would have had a direct tendency to negative the guilt of the accused.

We find nothing in the record warranting a reversal. The judgment is affirmed.

Morris, C. J., Fullerton, Chadwick, and Mount, JJ., concur.