[No. 25550.   Department One.   September 27, 1935.]

THE STATE OF WASHINGTON, *Respondent*, v. JOE VOGEL, *Appellant*.[1]

*Fix & Clifford*, for appellant.

*Warren G. Magnuson* and *Frank Harrington*, for respondent.

GERAGHTY, J.—The appellant was convicted of grand larceny, in that, by trick, device, and bunco game, he took $1,540 from Robert Butkovich.

The prosecuting witness testified that in Portland, Oregon, he met a man by the name of Ramsey, who

[1]Reported in 49 P. (2d) 473.

told him that he made his living by playing poker and needed money to play cards with a man whom he had met, and who proved to be the appellant, Vogel. Butkovich lent Ramsey six hundred dollars with which to play poker with Vogel. Ramsey lost the money. The three men came to Seattle February 27, 1934, taking a room at a hotel, where they played poker. On the morning of February 28, Butkovich withdrew $1,540 from a savings account in a Seattle bank. The record is somewhat indefinite as to how he lost this money.

According to one version of his testimony, after playing cards for a while "to be sociable," he was called out of the room. On returning, he found that Ramsey and the appellant had disappeared, and the money, which he had left on the bed, was likewise gone. According to another version, he played poker with the two men, and after his money had all been lost, the appellant and Ramsey were called out of the room and did not return. He was dazed and partially under the influence of liquor.

The appellant, testifying in his own behalf, said that he and Butkovich and a third person played poker, and he won $370.

The first error assigned by appellant is based upon the admission of the testimony of K. Ono, a Japanese. Ono testified that, being in business in Seattle, he became acquainted with a man calling himself Gray. Some time later, Gray told him that a friend of his by the name of Huntley would soon be in town; that Huntley's father had just died and left him considerable money and other property; that the witness met the man Huntley, whom he identified as the appellant; and that Huntley informed him he was going to Japan, and they discussed where he should go and the points of interest to see.

Gray suggested that, as Huntley was dissipating his means on women and liquor, they play poker with him and win his money. The plan was that Gray would sit behind Huntley and let Ono know what was in his poker hand.

They went together to Huntley's hotel room in Seattle on May 22, 1933. After playing a while, Ono won two hundred dollars from Huntley, which Huntley could not pay because he had only a check for sixty-five hundred dollars, which Ono could not cash. Arranging to play together the next night, Ono brought with him six hundred dollars of his own money. His money was placed in a dresser drawer, and chips for it given to him. In a short time, Ono had lost all the chips, and Gray suggested that Ono and himself leave the room and get more money. A short time after they left the room, Gray suggested that maybe Huntley would leave, and sent Ono back to watch him. When Ono returned to the room, the appellant was gone.

The appellant objects that this testimony, tending to prove another crime, was improperly admitted. It was admitted by the court upon the view that it tended to establish intent, and he so charged the jury, cautioning them that they were to consider it only for that purpose, and that the appellant could not be convicted of the offense with which he was then charged merely because he had committed some independent or collateral offense.

The appellant being charged with obtaining the money of the complaining witness by trick, device, and bunco game, Ono's testimony was competent as tending to prove intent and system, within the rule announced in *State v. Schultz*, 168 Wash. 120, 10 P. (2d) 980:

"This court has many times had before it the problem of when such evidence tending to show offenses other than the one charged is admissible. The law upon that subject, in the light of our prior decisions, was well stated by Judge Ellis, speaking for the court, in *State v. Schuman*, 89 Wash. 9, 153 Pac. 1084, Ann. Cas. 1918A 633, as follows:

" 'It is, of course, a general rule that evidence of the commission of a separate and distinct crime is inadmissible to aid the conviction of a defendant for the crime charged. There are, however, exceptions to this rule as thoroughly established as the rule itself. Where the purpose is to show a system or general design from which a criminal intent or purpose may be inferred in the commission of the particular act charged, collateral offenses of the same character and perpetrated in the same way, though not otherwise connected, can always be put in evidence as tending to establish the system or design. The logical basis of this exception to the general rule of exclusion is thus admirably expressed by Wharton:

" ' "When the object is to show system, subsequent as well as prior collateral offenses can be put in evidence, and from such system identity or intent can often be shown. The question is one of induction, and the larger the number of consistent facts the more complete the induction is. The time of the collateral facts is immaterial, provided they are close enough together to indicate that they are a part of the system. In order to prove purpose and design, evidence of system is relevant; and in order to prove system, collateral and isolated offenses are admissible from which system may be inferred." 1 Wharton, Criminal Evidence (10th ed.), p. 146, § 39.

" 'This exception has been recognized and adopted as a basis of decision by this court in many cases. *State v. Pittam*, 32 Wash. 137, 72 Pac. 1042; *State v. Craddick*, 61 Wash. 425, 112 Pac. 491; *State v. Downer*, 68 Wash. 672, 123 Pac. 1073, 43 L. R. A. (N. S.) 774; *State v. Wappenstein*, 67 Wash. 502, 121 Pac. 989; *State v. Hazzard*, 75 Wash. 5, 134 Pac. 514; *State v. Shea*, 78 Wash. 342, 139 Pac. 203.'

"Our later decisions adhere to this view: *State v. Anderson,* 107 Wash. 336, 181 Pac. 696, 185 Pac. 624; *State v. Austin,* 121 Wash. 108, 207 Pac. 954; *State v. Kreiss,* 133 Wash. 256, 233 Pac. 649; *State v. Clamp,* 164 Wash. 653, 3 P. (2d) 1096. See, also, 16 C. J. 597, and decisions there cited."

■ An officer of the Seattle police force, being the head of the bunco detail, testified that, on Butkovich's complaint of the loss of his money, he brought the appellant to police headquarters for questioning. He was asked what was said between himself and appellant. Over the objection of appellant's attorney, he answered:

"I took the defendant to the detective headquarters office in the Police Station, and I asked him about the complaint made by Butkovich, and at first he denied knowing anything about it, but I asked him why he had not stayed out of Seattle. I had arrested him before and had warned him to stay out of Seattle, and he said that it got ripe to get the money and he and his partner took the money while the getting was good. We talked about the times that he had been arrested, and I asked him about the Ono case, and he denied knowing anything about it."

The appellant contends that the witness' reference to former arrests was prejudicial. Later on, taking the stand himself, in response to questions by his counsel, appellant answered that he had been arrested twice before. Appellant's counsel did not move to strike the officer's testimony, but, on the contrary, by his own questions, elicited the fact of his client's previous arrests.

It is doubtful if the appellant was prejudiced by the testimony, but if so, he cannot now raise the question. *State v. Nelson,* 133 Wash. 30, 233 Pac. 12.

■ The same police officer, being questioned by the prosecuting attorney as to the variations of poker

games used by confidence men, was permitted to answer, over appellant's objection, as follows:

"Well, there are a good many variations. There is the so-called 'tip game,' where the confederate agrees with the so-called sucker to tip off what the other man has in his hand, and then, at the crucial point and on the big hand, he fails to give the tip. Then they can just go ahead and play straight poker and win the man's money and just stay there and fight it out with him, so to speak. If he becomes angry, just tell him that he has lost his money in a poker game and there is nothing he can do about it. Then there is another variation in that after the man loses his money, where one or both of the men have a hurry call out of the room, and sometimes one leaves and sometimes both of them leave at once, and let the man who loses his money do as he pleases about it."

The reception of this testimony is assigned as error on the ground that it was immaterial, had no relation to the facts in the case, and was prejudicial to appellant. The respondent contends that the officer's testimony was that of an expert and proper under the circumstances. We do not think so. The facts before the jury were such as needed no elucidation by expert testimony.

But, while we are of this view, we are unable to see how the appellant was prejudiced by the testimony. He gave his profession as that of a gambler and admitted being in the room with Butkovich and winning some of his money. The police officer testified to appellant's admission that he took Butkovich's money because it was "ripe for taking." There was abundant evidence, if believed by the jury, warranting the conclusion that the prosecuting witness was tricked out of his money. The circumstances tallied closely with the system outlined by the police officer. The testimony complained of amounted to no more,

670

under the circumstances, than a characterization by the witness of what was obvious to the jury from other evidence, properly in the case.

Finding no error in the record, the judgment will be affirmed.

MAIN, TOLMAN, STEINERT, and BEALS, JJ., concur.