[No. 25959. *En Banc.* June 27, 1936.]

THE STATE OF WASHINGTON, *Respondent,* v.
BERT NAVONE *et al., Appellants.*[1]

*Flood, Lenihan & Ivers* and *John D. MacGillivray,*
for appellants.

*Warren G. Magnuson* and *Paul Coughlin (R. M.
Burgunder,* of counsel), for respondent.

TOLMAN, J.—The appellants were charged in the
superior court by information with the crime of grand
larceny as set forth in thirteen counts.

The substance of the charge contained in count one
was that the appellant Bert Navone did, with intent

[1]Reported in 58 P. (2d) 1208.

to deprive and defraud the city of Seattle, obtain from the city the sum of $101.25 by fraudulently representing in a written payroll and claim submitted to the city officials that he, Navone, had worked for the city one hundred sixty-two hours as a laborer on truck No. 2 of the North Seattle Garbage and Hauling Company in the month of December, 1931, and that he had earned and was entitled to receive that sum of money for the labor so performed; when, in truth and in fact, he, Navone, had not worked on truck No. 2 at all and was not entitled to receive the sum claimed or any sum of money from the city whatsoever. The appellant Murray was charged in the same count with aiding and abetting Navone in the commission of the crime charged. The remaining twelve counts were similar in form and effect, charging the same acts as having been committed in each of the twelve succeeding months.

The case was tried to a jury, which found both appellants guilty on each count; and from a judgment and sentence on the verdict, both have appealed.

But three errors are assigned. The first of these questions the sufficiency of the evidence. The theory of the state was that appellant Navone, charged as principal, did in the month of December, 1931, and each month thereafter, up to and including December, 1932, present to the city a written claim or voucher in which he represented that he had worked a certain number of hours in such month on truck No. 2 of the North Seattle Garbage and Hauling Company, for which labor he was entitled to be paid the sum designated; that this claim or voucher was false or fraudulent, in that Navone had not worked at all upon truck No. 2 during the months referred to and was not entitled to any sum of money for labor performed; and that the city officials charged with the duty of

auditing and paying claims were deceived by the claim or voucher submitted, and thus Navone unlawfully and fraudulently received moneys from the city each month. The appellant C. L. Murray was superintendent of the garbage collection for the city of Seattle during the time mentioned, and it is the theory of the state that Murray actively aided and abetted Navone in the commission of the crime charged.

Upon the other hand, the appellants, from the beginning of the trial and at all times since, have admitted with seeming frankness that Navone did not actually work on truck No. 2 during any of the months charged; that he did receive the moneys mentioned in the several counts; but that, although irregularly vouchered, the moneys were received by Navone in good faith as compensation for services fully' performed.

It appears that the North Seattle Garbage and Hauling Company, which has been mentioned, was the official garbage collector in a certain portion of the city of Seattle at the time mentioned in the information and for a long time prior thereto; that Navone had a substantial financial interest in this garbage company, was its manager at all times, and that, prior to the year 1926, he had actually worked on truck No. 2 of the garbage company, and each month he had been vouchered as a laborer on that truck. All are agreed that Navone ceased to perform labor as a member of the crew of truck No. 2 at some time during the latter part of the year 1926.

The defense undertook to show, and now contends, that, at or about the time Navone ceased to be employed on truck No. 2, he, by and with the advice and through the direction of appellant Murray as superintendent, furnished a light truck, called a complaint truck, which was put to work for the purpose of

handling complaints and taking care of garbage collections overlooked or neglected by the large trucks in covering their usual routes. The defense undertook to show that Navone became the driver of this complaint truck.

Navone testified that he worked daily in driving that truck as many or more hours as were vouchered to the city in his behalf; and that, by agreement and for the good of the service, it was arranged between him and superintendent Murray that he should be paid for his labor only, the use of the complaint truck being supplied gratis, and that, for convenience, since the complaint truck was not vouchered as being in the city's employ, Navone's time as a laborer in driving that truck should be vouchered as though he were still employed on truck No. 2. It is claimed that this was done openly, without any pretense or concealment; that every one who had reason to know did know of the fact; and that, though irregular, the payments thus made to Navone were legitimate, being fully earned, and were received by him in good faith with no intent to defraud.

The state in its case in chief seems to have been content with showing that there was vouchered and paid these sums to Navone as a laborer on truck No. 2, when, in fact, he did not labor at all on truck No. 2, together with some incidents and details bearing on the question of intent, leaving the intent to be drawn very largely from the irregularity, though, in the cross-examination of the state's witnesses, considerable evidence was developed tending more or less to corroborate the theory of the defense. The state's rebuttal was, to say the least, disappointing. No attempt was made to show that appellant Navone did not drive the complaint truck, at least to some extent, during the time in question, and the jury must have

found from the evidence of the state's witnesses that Navone did drive the complaint truck, more or less, and that he was not compensated therefor other than by the payments charged in the information.

Many witnesses were produced for the defense, including the appellants themselves and others who worked with, for or under the direction of the appellants, or one of them, or were closely allied with Navone and his affairs. The testimony produced by the defense would, if it could all be accepted at its face value and could all be believed, be such as to convince the most skeptical that no offense was committed; but, of course, the jurors were the judges of the credibility of the witnesses.

Practically speaking, the only issue which the jury had to decide was the question of intent, and intent being an incorporeal and subtle thing, the answer was to be drawn from all of the evidence in the cause.

■ We have not attempted here to outline that testimony, nor to give any of the details, but we have read and considered it in the light of the comments and theories of both sides; and after some doubt and hesitation, we have reached the conclusion that there was sufficient evidence to take the question of intent to the jury. We are the more satisfied in this respect because the trial court, who personally saw and heard the witnesses himself, refused to interfere; and we, who have read only the typewritten record and have seen none of the witnesses, and who cannot say with any confidence which witnesses spoke truthfully and which, if any, spoke falsely in whole or in part, would be denying the right of trial by jury by interference.

■ The second error assigned relates to an instruction given to the jury, which instruction reads:

"In that connection, if you find from the evidence beyond a reasonable doubt that the defendant Murray

knew that the representations made by the defendant Navone, in connection with his claim for services in any particular count or counts of the information, were false and fraudulent and made with the intent to defraud the city of Seattle, and further find that the said defendant Murray approved such false or fraudulent account, if in fact you find such account to be false and fraudulent, then the defendant Murray, as to such count, would be an aider or abetter, and in such case you would be justified in finding the defendant Murray guilty as to such count.''

This instruction is criticized because it does not contain language to the effect that Murray must have acted with intent to defraud the city of Seattle. It would seem that, if one knew of the falsity of the representations and knew they were made with intent to defraud, he, by aiding and abetting, would himself evidence an intent to defraud, and such an intent on his part would necessarily be inferred from his knowledge of the intent on the part of the one who was to receive the money. But however this may be, by other instructions given, the finding of a felonious intent on the part of Murray was made necessary in order to convict him. Even though the instruction quoted be considered incomplete, the instructions as a whole correctly state the law.

The third and final assignment of error is based upon the conduct of the special prosecuting attorney which is thought to be misconduct. It appears that, in his closing argument to the jury, the special prosecutor said:

''MR. BURGUNDER: They have extolled the honesty of these two men. An honest man is known as such among his neighbors and his friends. There is no difficulty in calling into a case witnesses who will testify as to his reputation. MR. LENIHAN: That is objected to. Just a moment, Mr. Burgunder. That is objected to, your Honor, as improper argument.

THE COURT: Objection sustained. MR. BURGUNDER: The state cannot attack the character of a defendant— MR. LENIHAN: The same objection, your Honor. MR. BURGUNDER: —until it is put in issue. MR. LENIHAN: The same objection, Your Honor. THE COURT: That is a rule of law. MR. BURGUNDER: And it was not put in issue.''

Misconduct is to be judged not so much by what was said or done as by the effect which is likely to flow therefrom. What would be misconduct in one case might very well be held not to be misconduct in another. Each situation involving the question of misconduct must stand by itself and must be considered in the light of all of its facts and circumstances to the end that verdicts properly arrived at shall not be disturbed, and that those verdicts which may have been induced by prejudice, or by something beyond the issues, shall not be allowed to stand. It is useless, therefore, to cite cases in which this question has been discussed or to compare the situation here presented with other situations shown in our reports, save that, as illustrative, the recent case of *State v. Lindsey*, 185 Wash. 206, 52 P. (2d) 1246, may be considered.

The state's case was none too strong at the best. The only issue before the jury was the question of intent; and upon that question, whether or not the appellants were men of integrity and honesty and whether or not they testified truthfully, bore with peculiar force. If, in fact, they were men of good character, their testimony would have weight; but if of bad character, that, coupled with their interest in the result, would tend to wholly destroy their credibility.

The first part of counsel's statement, suggesting that an honest man is known to his friends and neighbors and might easily obtain witnesses as to his good

character and suggesting, of course, a lack of such testimony in this case, was most unfortunate. When an objection was sustained thereto, there was, perhaps, very nearly the equivalent of an instruction to the jury to disregard the statement; and if the matter had ended there, we might, perhaps, hold that there was no prejudicial error. But counsel proceeded instantly with the statement that "The state cannot attack the character of a defendant—until it is put in issue," and the court, with proper motives and correct intention, approved that statement by saying, "That is a rule of law." Then counsel loosed his thunderbolt and added, "And it was not put in issue." Thus, counsel not only had the last word but he, in effect, told the jury that the persons on trial were of bad reputation, so much so that they dare not put their characters in issue, and that therefore they were unworthy of belief.

It is true that counsel for the defense might have then asked the court to instruct the jury to disregard the statements made, but, had that been done, it seems to us the virus could not have thus been removed. This question of character bears with peculiar force upon the issue of intent, and the character of appellants having been destroyed with a single blow, the jury, as ordinary men and women, must necessarily have been greatly influenced thereby in determining the issue of intent. The ordinary direction to disregard could not restore the minds of the jurors to that fair and impartial state which the law requires.

It is also true that counsel for the defense might have moved for a mistrial and, perhaps, should have done so; and yet, where we can see a case, such as this, so nicely balanced upon such a delicate subject as intent and can see the possible and probable preju-

dice flowing from the misconduct, it would seem but fair and just to hold that counsel's repeated objections, three or four times repeated, should be sufficient to enable us to rule upon the real question involved.

Our ruling is that the conduct complained of was misconduct, that it was highly prejudicial, and that, because of it, a new trial should have been granted.

Reversed, with directions to grant a new trial.

MAIN, MITCHELL, BEALS, BLAKE, STEINERT, and GERAGHTY, JJ., concur.

MILLARD, C. J. (dissenting)—To grant a new trial on the ground of misconduct of counsel means that we disregard *State v. Vogel,* 183 Wash. 664, 49 P. (2d) 473; *State v. Stevens,* 135 Wash. 361, 237 Pac. 723; *State v. Ashe,* 182 Wash. 598, 48 P. (2d) 213; *State v. Spear,* 178 Wash. 57, 33 P. (2d) 905, and other cases.

I find no reversible error. The judgment should be affirmed.

HOLCOMB, J., concurs with MILLARD, C. J.