# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74054-7-I |
|  | ) |  |
| Respondent, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| DARRESON CHESTER HOWARD, | ) | UNPUBLISHED |
|  | ) |  |
| Appellant. | ) | FILED: May 15, 2017 |
|  | ) |  |

Cox, J. — Darreson Howard appeals his judgment and sentence. There was sufficient evidence for the jury to convict him as an accomplice to the crimes of first degree attempted robbery and first degree assault. We do not reach Howard's challenge to the admission of the res gestae evidence because Howard failed to object to its admission at trial. There was no violation of the speedy trial rule, Howard's right to be present during critical stages of the trial, or his public trial right. The prosecutor's comments, which Howard challenges for the first time on appeal, were not flagrant and ill-intentioned. Accordingly, these comments do not provide a basis for reversal. There was no double jeopardy violation in sentencing him for first degree assault and attempted first degree robbery. We affirm.

Around 11:15 p.m. on April 1, 2013, Richard Powell, a town car driver, dropped off a customer in West Seattle. He then drove to a nearby location and stepped out of the car to have a cigarette and to call dispatch for his next customer.

A car passed by him and two people, possibly men, exited the car and approached him. One pulled out a gun and told Powell to empty his pockets. The other stood closely nearby.

Powell responded by drawing his own gun, for which he had a concealed weapons permit. Juan Garcia-Mendez, the person with the gun and who had ordered Powell to empty his pockets, shot Powell three times in the chest. Powell had fired two shots.[1] Garcia-Mendez and the other person with him fled. Powell managed to call 911. Police responded to the scene. Powell required significant medical treatment to survive and recover.

Surveillance video from the scene was shown to the jury at trial. It showed this encounter and the exchange of gunfire.

Shortly after this incident, Garcia-Mendez approached a police officer near the scene. Garcia-Mendez had sustained gunshot wounds. The police also discovered a silver KIA Spectra near the scene with blood in the rear seat.

Following an investigation, the State charged three individuals based on these events: Sophia Delafuente, Garcia-Mendez, and Howard. Specifically, the State charged Howard, as an accomplice, with one count of first degree assault

---

[1] Report of Proceedings Vol. 17 (August 19, 2015) at 681, 683; Report of Proceedings Vol. 19 (August 26, 2015) at 1061-64, 1072, 1074.

and one count of attempted first degree robbery. A jury found him guilty as charged.

The trial court denied Howard's motion to vacate, on double jeopardy grounds, the attempted first degree robbery conviction. The court entered its judgment and sentence on the jury verdicts.

Howard appeals.

## SUFFICIENCY

Howard argues that insufficient evidence supports his conviction as an accomplice to attempted first degree robbery. The record is sufficient to support this conviction.

Due process requires the State to prove every element of a crime beyond a reasonable doubt.[2] An insufficient evidence claim "admits the truth of the State's evidence and all reasonable inferences from that evidence."[3] The critical inquiry is "'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"[4] "[W]e view the 'evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'"[5]

---

[2] State v. Rodriquez, 187 Wn. App. 922, 930, 352 P.3d 200, review denied, 184 Wn.2d 1011 (2015).

[3] Id.

[4] Id. (quoting Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

[5] State v. Garcia, 179 Wn.2d 828, 836, 318 P.3d 266 (2014) (quoting State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009)).

Circumstantial evidence can be as reliable as direct evidence.[6] But "inferences based on circumstantial evidence must be reasonable and cannot be based on speculation."[7]

We defer to the jury on questions regarding conflicting evidence, witness credibility, and the persuasiveness of evidence.[8]

Here, the trial court gave the jury the following unchallenged accomplice instruction:

> A person is guilty of the crime if it is committed by the conduct of another person for which he or she is legally accountable. A person is legally accountable for the conduct of another person when he or she is an *accomplice* of such other person in the commission of the crime.
>
> A person is an *accomplice* in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she . . . :
>
> . . . .
>
> (2) *aids or agrees to aid* another person in planning or committing the crime.
>
> The word *"aid"* means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.
>
> . . . .[9]

---

[6] Rodriquez, 187 Wn. App. at 930.

[7] State v. Vasquez, 178 Wn.2d 1, 16, 309 P.3d 318 (2013).

[8] Rodriquez, 187 Wn. App. at 930.

[9] Report of Proceedings Vol. 22 (September 1, 2015) at 1499-1500 (emphasis added).

The trial court also gave the following unchallenged attempted first degree robbery instruction:

> To convict defendant Darreson Howard of the crime of attempted robbery in the first degree as charged in Count 2, each of the following elements of the crime must be proved beyond a reasonable doubt: (1) that on or about April 1, 2013, Darreson Howard or an accomplice did an act that was a substantial step toward the commission of a robbery in the first degree; (2) that the act was done with the intent to commit robbery in the first degree; and (3) that the act occurred in the state of Washington.
>
> . . . .
>
> A person commits the crime of robbery when he unlawfully and with intent to commit theft thereof takes personal property from the person or in the presence of another person, that person's role by the use of or threatened use of immediate force, violence, or fear of injury to that person. A threat to use immediate force or violence may be either expressed or implied. Force or fear must be used to obtain or retain possession of the property which would prevent or overcome resistance to the taking, in either of which cases the degree of force is immaterial.[10]

Howard challenges the sufficiency of evidence for accomplice liability in three ways. None is persuasive.

*Howard's Presence at the Scene During the Attempted Robbery*

He argues there was insufficient evidence to place him at the scene of the crime when it occurred. We disagree.

The parties stipulated that the judge read to the jury a joint statement regarding certain evidence. The jury heard evidence from this stipulation that prior to this shooting, government officials asked Howard for his cell phone number, which he provided.

---

[10] Id. at 1502-03.

During the investigation of this shooting, police obtained cell phone tower data regarding usage of the cell phone with the number Howard previously provided. That usage was for the period from April 1, 2013 at 11:49 p.m. through April 2, 2013 at 12:56 a.m.

A detective testified that during the above time frame, Howard's cell phone "ping[ed]" off two cell phone towers, which means the phone was located in the area of the cell towers. On April 1 at 11:49 p.m., the phone pinged near the location of Powell's shooting.

Shortly after midnight, calls were made from the phone six to eight blocks away from the scene and pinged a different cell phone tower. This tower is closest to the 5600 block on Delridge Way in West Seattle. Celia Galindo, Howard's "romantic interest," resided in this area at the time.

That night at 11:50 p.m., Galindo called 911 to report that Garcia-Mendez had been shot. Her daughter later told police that two men, meeting Garcia-Mendez's and Howard's description, were in Galindo's apartment on that date.

Additionally, police found a KIA Spectra parked in the area. Howard's finger print was on an outside window and his palm print was on the truck lid. His DNA, mixed with Garcia-Mendez's DNA, was also found on the front passenger door handle. Significantly, police found blood and bloody tissue inside the car.

In that same area, police also found a garbage can containing bloody clothing, bloody tissue, and a black glove. The glove contained a DNA mixture from Garcia-Mendez, Howard, and Delafuente.

6

Police also found two red bandanas on the street covered with blood. The bandanas contained a DNA mixture from both Garcia-Mendez and Howard. Notably, the jury also watched a store surveillance video of Howard purchasing a red bandana at a mini-mart near Delridge in West Seattle the morning of Powell's shooting.

After Howard's arrest, a detective asked him if he knew the purpose of their conversation. In response, Howard replied that Garcia-Mendez got shot but claimed that he was not there. When the detective asked Howard about his cell phone number, he claimed that the number the detective mentioned was not his. This conflicted with his previous statement to government officials that the cell phone number that he previously supplied was his.

At trial, Howard attempted to rebut the cell tower evidence regarding the proximity of the phone to the scene of the crime. He claimed that he was not at the crime scene because he was at Galindo's apartment, which was near one of the cell phone towers.

A jury could find beyond a reasonable doubt that Howard was at the scene of the crime during the relevant time period. The cell tower evidence shows that a cell phone, using his phone number, was near the crime scene at the relevant time periods. Although after his arrest he denied that the cell phone number was his, this conflicts with his earlier statement that the number was his. And despite Howard's alternative explanation for the evidence, the jury was entitled to decide which statement was credible and which was not. We will not overturn that credibility determination.

7

The DNA and blood evidence also tie Howard to the crime. That Garcia-Mendez was bleeding after being shot is consistent with the evidence that Powell fired his gun during the encounter. The timing of Galindo's 911 call reporting Garcia-Mendez's injuries is also consistent with Powell having shot him during the attempted robbery.

Likewise, Howard's DNA was on the car containing some of the blood evidence. That Howard purchased a red bandana that matched the description of the bloody bandana found at the crime scene links him further to the crime.

The jury also watched surveillance footage of the encounter and gunfire exchange. A detective analyzed the video and testified about his analysis. He went through the video frames and described the sequence of the gunshots for the jury.

The jury was entitled to decide based on this video and the other evidence that Howard was the other person next to Garcia-Mendez in the video.

Based on this evidence, a jury could find beyond a reasonable doubt that Howard was present at the scene of the crime at the relevant time.

Howard argues that the cell tower evidence did not establish his presence at the relevant time because it provided only which cell phone tower the phone used, not the phone's exact location or the phone's user.[11] He concedes that this evidence, at best, establishes that the phone was used in the vicinity of the tower. But that is the point of this circumstantial evidence. The jury was entitled

_____

[11] Appellant's Opening Brief at 35.

to consider this evidence and other direct and circumstantial evidence in determining that Howard was at the crime scene at the relevant time.

Howard also argues that while the DNA evidence from the KIA Spectra and the bandana establish that he had contact with both items, it does not establish when that contact occurred. Again, the jury was entitled to consider this circumstantial evidence together with other evidence to determine whether Howard was present at the scene of the crime at the relevant time.

Finally, although Howard offered alternative explanations for the evidence, the jury was not required to accept them. Rather, the jury was entitled to reasonably infer based on the facts and evidence presented that he was present at the crime scene at the relevant time.

### Garcia-Mendez's Intent to Commit Attempted Robbery

Without citation to authority, Howard also argues there was insufficient evidence that Garcia-Mendez *intended* to commit robbery to establish that Howard acted as an accomplice.[12] This argument is unpersuasive.

First, nowhere in the unchallenged jury instruction on accomplice liability is there any requirement to prove Garcia-Mendez's *intent* to commit attempted robbery. Thus, the premise of this argument is false. There simply was no requirement in the jury instructions to prove any intent of Garcia-Mendez in order to establish Howard's accomplice liability.

Second, more importantly, both the accomplice liability instruction in this case and relevant case law make clear that it is sufficient to show general

---

[12] Id. at 33-34.

knowledge of the charged crimes to establish accomplice liability. In Washington, an accomplice is not required to "'have specific knowledge of *every element* of the crime committed by the principal, provided he has general knowledge of that specific crime.'"[13] Further, "'[t]he crime' means the charged crime, but because only general knowledge is required, even if the charged crime is aggravated, premeditated first degree murder . . . , 'the crime' for purposes of accomplice liability is murder, regardless of degree."[14]

Here, the jury could reasonably infer that Howard had knowledge of the robbery. As we previously discussed in this opinion, a jury could find beyond a reasonable doubt that Howard was the other person with Garcia-Mendez at the crime scene at the relevant time. The jury watched the video footage that showed two individuals approach Powell, get very close to him, and remained close to him before the shooting. Based on this evidence, the jury could reasonably infer that Howard saw Garcia-Mendez point a gun at Powell and heard Garcia-Mendez demand that Powell empty his pockets. Thus, the jury could also reasonably infer that Howard had knowledge of the robbery.

Additionally, during trial, Leon Gordon testified about his interaction with two individuals shortly before Powell's shooting. After a car drove by him and parked, two people exited the vehicle and approached Gordon. They were completely covered and wore dark clothing, including scarfs or bandanas around

---

[13] In re Pers. Restraint of Domingo, 155 Wn.2d 356, 365, 119 P.3d 816 (2005) (quoting State v. Roberts, 142 Wn.2d 471, 512, 14 P.3d 713 (2000)).

[14] In re Pers. Restraint of Sarausad, 109 Wn. App. 824, 835, 39 P.3d 308 (2001).

their heads. One of the two individuals, had a "strange" hairstyle where the hair appeared shorter in the front and longer in the back. That individual was shorter than the other, had a male voice, and asked Gordon if he was "gang banging." Gordon responded "No" and walked away towards a bus stop. He did not see any weapons but watched the car drive off.

Shortly after, two men approached Powell and one of them shot him after he pulled a gun in response to the demand to empty his pockets. A police officer responding to Powell's shooting saw Gordon across the street from the scene and contacted him. Gordon testified that he came into contact with the police within "five minutes or less" after his encounter with the two individuals. The day after the shooting, Gordon identified Garcia-Mendez from a photo montage as one of the individuals.

The record shows that on the day of these incidents, both Howard and Garcia-Mendez had "unusual haircuts in which their heads were shaved at the front of the ears and the hair was very long in the back." Howard is also four inches shorter than Garcia-Mendez. Based on this evidence, the State demonstrated, by a preponderance of the evidence, Howard's involvement in the Gordon incident.

At trial, the State argued that Howard and Garcia-Mendez went "looking for a target, starting with . . . Gordon," and later picked Powell as their target. The evidence of the Gordon encounter showed that Howard and Garcia-Mendez previously acted together in an incident close in proximity and time to the robbery

and Powell's shooting. From this evidence, the jury could reasonably infer that Howard had knowledge of the robbery.

*Howard Aids in the Attempted Robbery*

Howard lastly argues that the evidence was insufficient to show that he acted in any way to facilitate the attempted robbery. We disagree.

Here, as we previously discussed in this opinion, the video footage shows that both individuals approached Powell, got very close to him, and remained close to him before the shooting. From the short amount of time that passed between the approach and the shooting, the jury could reasonably infer that Howard remained next to Garcia-Mendez in order to assist in the robbery. The jury could also reasonably infer that Howard saw Garcia-Mendez point a gun at Powell and heard Garcia-Mendez demand that Powell empty his pockets. Thus, the evidence was sufficient for the jury to find that Howard acted with the knowledge that his actions would promote or facilitate the commission of the attempted robbery.

## ER 404(b)

Howard argues that the trial court abused its discretion by admitting evidence of his alleged prior bad acts—specifically, the Gordon incident. He did not object to admission of the evidence of the prior incident, and there is no showing of a manifest error affecting a constitutional right.[15] Accordingly, we do not address his challenge to the admissibility of the res gestae evidence.

---

[15] See RAP 2.5(a).

Pretrial, Howard moved to exclude any evidence or mention of gang membership or affiliation. The trial court prohibited any such mention. But there was no motion or other objection to the admission of evidence describing the incident with Gordon. Accordingly, Howard did not preserve this issue for review. He does not argue to the contrary in his briefing on appeal.

## SPEEDY TRIAL RIGHT

Howard argues he is entitled to dismissal because the trial court violated his speedy trial right. There was no such violation in this case.

CrR 3.3 protects a defendant's constitutional right to a speedy trial.[16] CrR 3.3(b)(1)(i) provides that a defendant detained in jail shall be brought to trial within 60 days of arraignment.[17]

We review for abuse of discretion a trial court's decision to grant a continuance.[18]

Here, Howard's argument focuses on the two trial court orders continuing his trial. It is undisputed that Howard's speedy trial "[e]xpiration date" was set for September 4, 2015. The two continuance orders were entered on August 5th and 6th of 2015. Howard's trial began on August 10th, 2015, before the expiration date.

Because the trial court did not continue Howard's trial beyond the speedy trial expiration date, there was no violation of his right to a speedy trial.

---

[16] State v. Kenyon, 167 Wn.2d 130, 136, 216 P.3d 1024 (2009).

[17] State v. Ollivier, 178 Wn.2d 813, 823, 312 P.3d 1 (2013).

[18] Id. at 822-23.

Howard relies on State v. Kenyon[19] to argue that the trial court violated his speedy trial right by failing to provide required details regarding the lack of judicial availability. But that case is distinguishable because the trial court in that case continued the trial past the speedy trial deadline.[20] Thus, it was required to document the availability of pro tempore judges and unoccupied courtrooms but failed to do so.

That is not the case here. The continuances did not continue Howard's trial beyond the speedy trial expiration date.

## RIGHT TO BE PRESENT

Howard argues that the trial court violated his right to be present at trial. There was no such violation.

As a matter of due process, criminal defendants have a fundamental right to be present at all critical stages of the trial.[21] "A 'critical stage' is one at which the defendant's presence 'has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'"[22]

Whether a defendant's constitutional right to be present has been violated is a question of law we review de novo.[23]

---

[19] 167 Wn.2d 130, 216 P.3d 1024 (2009).

[20] Id. at 135.

[21] State v. Zyion Houston-Sconiers, No. 92605-1, slip op at 31 (Wash. Mar. 2, 2017), http://www.courts.wa.gov/opinions/pdf/926051.pdf.

[22] Id. (internal quotation marks omitted) (quoting State v. Irby, 170 Wn.2d 874, 881, 246 P.3d 796 (2011)).

[23] Irby, 170 Wn.2d at 880.

A defendant's right to be present is not absolute.[24] In In re Personal Restraint of Benn, the supreme court held that Gary Benn did not have a right to be present at a continuance hearing.[25] This is because his absence during the hearing "did not affect his opportunity to defend the charge. The motion for continuance involved no presentation of evidence, nor was the purpose of the hearing . . . to determine the admissibility of evidence or the availability of a defense . . . ."[26] The court also determined that if any such right existed, Benn's absence was harmless.[27]

Here, according to Benn, Howard did not have a right to be present when the court entered the orders continuing his trial. Thus, the trial court did not violate Howard's right to be present during a critical stage.

Howard relies on State v. Rupe[28] to argue that a trial court's "[c]onsideration of the time for setting the trial is a critical stage." He also argues that the trial court's error is not harmless because his absence deprived him of the opportunity to object to the continuances as CrR 3.3 requires.

Rupe is distinguishable because the issue in that case was whether the defendant was entitled to counsel when the trial court set his resentencing trial

---

[24] State v. Thompson, 190 Wn. App. 838, 843, 360 P.3d 988 (2015), review denied, 185 Wn.2d 1012 (2016).

[25] 134 Wn.2d 868, 920, 952 P.2d 116 (1998).

[26] Id.

[27] Id. at 921.

[28] 108 Wn.2d 734, 741, 743 P.2d 210 (1987).

date.[29] That was not the case here. Thus, Howard's reliance on that case is misplaced.

## RIGHT TO PUBLIC TRIAL

Howard argues that the trial court violated his right to a public trial. There was no such violation.

Defendants have a constitutional right to a public trial.[30] The public has a complementary right to open proceedings under the federal and state constitutions.[31]

Before determining whether a violation occurred, Washington courts apply the experience and logic test to determine whether a particular proceeding implicates a defendant's public trial right.[32] Under the experience prong, the court asks "whether the place and process have historically been open to the press and general public."[33] Under the logic prong, the question is "'whether public access plays a significant positive role in the functioning of the particular process in question.'"[34]

---

[29] Id. at 741-42.

[30] See Const. art. I, § 22; U.S. Const. amend. VI.

[31] State v. Rainey, 180 Wn. App. 830, 837, 327 P.3d 56 (2014).

[32] State v. Sublett, 176 Wn.2d 58, 72-73, 292 P.3d 715 (2012) (C. Johnson, J., lead opinion); see also id. at 136, 142 (Stephens J., concurring).

[33] Id. at 73.

[34] Id. (quoting Press-Enter. Co. v. Superior Court of CA for Riverside County, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)).

If the answer to both questions is affirmative, "experience and logic counsel that a particular proceeding must be open."[35] The defendant bears the burden of establishing a public trial right violation.[36]

Whether a defendant's public trial right has been violated is a question of law we review de novo.[37]

*Experience Prong*

Howard argues that "continuance hearings have historically been held in open court." Because Howard failed in his burden to satisfy the experience prong, we disagree.

Howard fails to provide any authority showing that a trial court's entry of orders continuing trial within the speedy trial period has historically been open to the press and general public. We assume that he has found none.

He cites article 1, section 22 of Washington's constitution and Kenyon[38] to support his argument. Washington's constitution states that an accused has the right "to have a speedy public trial."[39] But it says nothing about continuance hearings or how often they occur in open court.

---

[35] State v. Njonge, 181 Wn.2d 546, 554, 334 P.3d 1068 (2014).

[36] See State v. Jones, 185 Wn.2d 412, 422-24, 372 P.3d 755 (2016).

[37] Id. at 421.

[38] 167 Wn.2d at 136.

[39] Const. art. I, § 22.

Kenyon does not support this argument for the same reason. The focus of that case was the speedy trial right, not the public trial right. Thus, Howard failed in his burden to satisfy the experience prong.

Because he must establish both prongs and fails to show that the experience prong supports his argument, we need not address the logic prong.

## PROSECUTORIAL MISCONDUCT

Howard argues that the prosecutor committed misconduct. We decline to reach the issue because he did not object below and the comment is neither flagrant nor ill-intentioned.

To prevail on a claim of prosecutorial misconduct, the defendant must establish that the prosecutor's conduct was both improper and prejudicial.[40] "'[M]isconduct is to be judged not so much by what was said or done as by the effect which is likely to flow therefrom.'"[41]

A defendant waives the misconduct issue by failing to object or request a curative instruction at trial, "unless the conduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice."[42] This heightened standard requires that a defendant "show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the

---

[40] State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).

[41] Id. at 762 (quoting State v. Navone, 186 Wash. 532, 538, 58 P.2d 1208 (1936)).

[42] State v. Lindsay, 180 Wn.2d 423, 430, 326 P.3d 125 (2014).

misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'"[43]

When the defendant fails to object, it "'**strongly suggests** to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial.'"[44]

*Closing Argument*

Howard argues that the prosecutor committed misconduct during closing argument. But he did not object. Thus, this argument is not preserved for review unless the comment was flagrant and ill-intentioned.[45]

"In closing argument, a prosecutor is afforded wide latitude to draw and express reasonable inferences from the evidence."[46] But "[i]t is improper for prosecutors to 'use arguments calculated to inflame the passions or prejudices of the jury.'"[47]

In State v. Davis, the supreme court was faced with a prosecutor's comment during closing argument that the defendant was the victim's "'judge,

---

[43] Emery, 174 Wn.2d at 761 (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

[44] State v. McKenzie, 157 Wn.2d 44, 53 n.2, 134 P.3d 221 (2006) (quoting State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990)).

[45] Lindsay, 180 Wn.2d at 430.

[46] State v. Reed, 168 Wn. App. 553, 577, 278 P.3d 203 (2012).

[47] State v. Thierry, 190 Wn. App. 680, 690, 360 P.3d 940 (2015) (internal quotation marks omitted) (quoting In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012)), review denied, 185 Wn.2d 1015 (2016).

jury[,] and executioner.'"[48] The supreme court specifically concluded that nothing in the record "indicate[d] the comment was intended to inflame the jury."[49]

Here, during trial, a police officer testified that Powell "had passed on" when the officer arrived and that he tried to bring Powell "back to life." An emergency physician also testified that Powell "would have definitely died" without medical intervention.

During closing argument, the prosecutor stated:

> Without the heroic efforts of the first responding officers, the first responding medics, and Harborview Medical Center, you would be sitting here on a homicide trial. But for medical intervention, the defendants would have *successfully executed* Mr. Powell.[50]

Howard did not object but now challenges the above emphasized language for the first time on appeal.

As in Davis, nothing in this record indicates that the prosecutor made this comment to inflame the passions or prejudices of the members of the jury. Although this statement may have been a strong characterization of the evidence presented, it was not improper and, thus, was not flagrant and ill-intentioned.

Howard argues that the prosecutor improperly appealed to the jurors' bias. To support this argument, Howard cites a supreme court case that discusses how a prosecutor injected racial prejudice into the trial.[51] But the characterization

---

[48] 175 Wn.2d 287, 337, 290 P.3d 43 (2012) (internal quotation marks omitted) (quoting State v. Davis, 141 Wn.2d 798, 873, 10 P.3d 977 (2000)).

[49] Davis, 141 Wn.2d at 873.

[50] Report of Proceedings Vol. 22 (September 1, 2015) at 1509 (emphasis added).

[51] See State v. Monday, 171 Wn.2d 667, 676-81, 257 P.3d 551 (2011).

of Powell's condition, consistent with the evidence in the record, does not equate to racial prejudice.

Lastly, Howard argues that the prosecutor's statement "improperly implied [that] the State spared Mr. Howard" from a more serious charge of murder. Not so. The prosecutor's statement that "the defendants would have successfully executed Mr. Powell" merely reflects the State's characterization of the evidence presented to the jury.

## DOUBLE JEOPARDY

Howard argues that the trial court improperly denied his motion to vacate his attempted robbery conviction. Because there is no double jeopardy violation, we disagree.

In a single proceeding, the prosecution may bring, and the jury may consider, multiple charges arising from the same criminal conduct.[52] But courts offend double jeopardy by entering multiple convictions for the same offense.[53]

The legislature defines offenses and sets punishments.[54] "'Where a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense.'"[55]

---

[52] State v. Freeman, 153 Wn.2d 765, 770, 108 P.3d 753 (2005).

[53] Id.

[54] Id. at 771.

[55] Id. (quoting In re Pers. Restraint of Orange, 152 Wn.2d 795, 815, 100 P.3d 291 (2004)).

State v. Freeman[56] controls here. In that case, the supreme court held that the legislature "did intend to punish first degree assault and first degree robbery separately, as the 'lesser' crime [first degree assault] has the greater standard range sentence."[57]

Here, the motion before the trial court was to "vacat[e] the attempted robbery conviction on double jeopardy grounds."[58] The theory underlying this request is not repeated on appeal. So, we consider that theory abandoned.[59]

The trial court denied this motion on the basis that it was "not supported in the law."[60] In doing so, the court relied on the "same elements" or "same evidence" test articulated in Blockburger v. United States[61] and State v. Calle.[62]

After some further discussion with counsel, the trial court inquired whether Howard wished "to make any additional argument[.]"[63] Howard's counsel replied "No, your Honor."

---

[56] 153 Wn.2d 765, 108 P.3d 753 (2005).

[57] Id. at 779-80.

[58] Clerk's Papers at 81; see also Report of Proceedings Vol. 26 (October 2, 2015) at 1629-30.

[59] See Prostov v. Dep't of Licensing, 186 Wn. App. 795, 823, 349 P.3d 874 (2015).

[60] Report of Proceedings Vol. 26 (October 2, 2015) at 1631.

[61] 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932).

[62] 125 Wn.2d 769, 777-78, 888 P.2d 155 (1995); Report of Proceedings Vol. 26 (October 2, 2015) at 1631.

[63] Report of Proceedings Vol. 26 (October 2, 2015) at 1632.

Despite having not made any additional argument about double jeopardy below, Howard now argues that the trial court should not have decided that the same elements test legally barred the application of double jeopardy. Rather, he now urges that this "assault committed in the furtherance of [this] robbery" invokes double jeopardy. Not so.

First, the supreme court expressly held to the contrary in Freeman. Specifically, the court held that the legislature "did intend to punish first degree assault and first degree robbery separately, as the 'lesser' crime [first degree assault] has the greater standard range sentence."[64]

Second, the essence of Howard's argument is that a double jeopardy analysis may, nevertheless, apply where the focus is on the facts of the individual case, not legislative intent. Specifically, he asserts this is so where the violence in an assault does not have an independent purpose.[65] For support, he relies on In re Personal Restraint of Francis.[66]

That case is distinguishable because, there, the State relied on Shawn Francis's *second degree* assault charge to elevate his attempted robbery charge to the first degree.[67] The supreme court in Freeman determined "that the legislature [did not] intend[] to punish *second degree* assault separately from

---

[64] Freeman, 153 Wn.2d at 779-80.

[65] Appellant's Opening Brief at 43.

[66] 170 Wn.2d 517, 242 P.3d 866 (2010).

[67] Id. at 521 (emphasis added).

23

first degree robbery when the assault facilitates the robbery."[68] Thus, the <u>Francis</u> court, relying on <u>Freeman</u>, concluded that the second degree assault conviction merged into the first degree attempted robbery conviction.[69]

First degree assault, not second degree assault, was the charge on which the jury convicted Howard in this case. <u>Freeman</u> expressly held there was no double jeopardy violation for these charges.

Moreover, <u>Francis</u> involved the merger doctrine. This case does not, and Howard does not argue otherwise. Thus, Howard's reliance on <u>Francis</u> is misplaced.

We also note that it is, at least, arguable that there was an independent purpose for the violence in this case. In <u>Freeman</u>, the supreme court stated that two convictions, which appear to be for the same crime, may be punished as separate offenses "if there is an independent purpose or effect to each."[70]

Here, Garcia-Mendez fired the first shot at Powell after he pulled out his own gun in response to the demand to empty his pockets. Powell fired in self-defense. Thus, Garcia-Mendez's shooting of Powell had the independent purpose of trying to prevent Powell from shooting him. That Garcia-Mendez's shooting of Powell proved unsuccessful—Powell wounded Garcia-Mendez in the exchange of gunfire—does not alter the analysis in this case.

---

[68] <u>Freeman</u>, 153 Wn.2d at 776 (emphasis added).

[69] <u>Francis</u>, 170 Wn.2d at 524-27.

[70] <u>Freeman</u>, 153 Wn.2d at 773.

24

In sum, the trial court's analysis of the double jeopardy issue was correct. The new argument on appeal does not alter our conclusion that the trial court properly rejected the double jeopardy claim.

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR:

_Leach, J._          _Becker, J._