IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78949-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| GREGORY ALLAN MCMORRIS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

ANDRUS, A.C.J. — Gregory Allan McMorris challenges his jury conviction for theft of a motor vehicle, contending the prosecutor's misconduct during closing argument deprived him of his right to a fair trial. We conclude the court's instructions cured any possible prejudice caused by the prosecutor's improper statements and affirm.

FACTS

On July 9, 2017, Sandra Todaro parked her Ford Explorer in the Quil Ceda Creek Casino parking lot, located on the Tulalip Indian Reservation, and entered the casino. The vehicle was loaded with materials for a swap meet the following weekend, including plywood fastened to the roof. While gaming inside, Todaro lost her keys and, after checking for them with security, discovered someone had stolen her Explorer.

Casino security reviewed security video footage, which revealed Todaro dropping her keys as she left a slot machine. A woman, identified as Stephanie

Burger, picked up the keys and appeared to ask someone nearby about them. Then Burger walked away with the keys, spoke to a man in the casino, and gave him the keys. The man walked to the parking lot, and shortly thereafter, the security footage shows Todaro's Explorer—identified by the plywood fastened to the roof—leaving the parking lot. The footage further revealed that the man to whom Burger gave the keys had arrived at the casino in a car with Burger and another woman.

Tulalip Police Officer Ian Schmitz responded to the casino's call about Todaro's stolen Explorer. When Officer Schmitz completed his interview with Todaro, casino security called him to say they had located Burger as she was exiting the casino. Officer Schmitz took statements from Burger and her friend, Victoria Johnson. Officer Schmitz testified that he learned McMorris's name from these statements and later identified McMorris in the security footage by matching his driver's license photo. One of the women called Officer Schmitz later that evening, and based on the information he received from her, he contacted the Snohomish County Sheriff's Office to assist him in searching for McMorris on property located in Stanwood, off the reservation. When Officer Schmitz stated, during his trial testimony, that the woman gave him a particular address, McMorris objected. The trial court sustained the hearsay objection and struck the evidence.

Snohomish County Sheriff Deputies Robert Schweitzer and Craig Hess went to the Stanwood address in the early morning hours of July 10, 2017. Neither deputy saw any sign of McMorris or the stolen Explorer. A few hours later, Deputy Hess returned to the Stanwood address and discovered Todaro's Explorer hidden

behind the home, with the front and back license plates covered. Deputy Hess still did not see anyone in or around the house, but he heard the locks on the Explorer locking and unlocking, as though someone nearby was using the remote entry key fob. Deputy Hess called out to anyone who might be in earshot, asking for the keys, but when no one responded, he had the Explorer towed away.

Todaro retrieved her Explorer from the tow yard later that morning. All of the items for the swap meet, including the plywood she had secured to the top of the vehicle, were missing, and the vehicle had sustained new damage.

Deputy Schweitzer arrested McMorris for stealing the Explorer, and the State charged McMorris with one count of theft of a motor vehicle. While in the Snohomish County jail pending trial, McMorris called his father. McMorris was recorded saying:

> I'm gonna sit in here because I'm doin' easy time, Dad. And I might have to do a little time for this fucking shit I did. . . . fuckin' those bitches . . . . that said I fucking did this shit . . . . Check this out, I might have to do some time for that, but I'm gonna come take care of my shit first.

At trial, the State presented the security footage and McMorris's jail call, but neither Burger nor Johnson testified. Todaro testified to the events as described above, including the presence of new damage to her Explorer when she retrieved it from the tow yard on July 10, 2017. Specifically, the driver's side exterior mirror was torn off and the front left fender was smashed.

During closing, McMorris argued the State failed to call Burger as a witness so there was no way of knowing what transpired between Burger and him on the security footage. Therefore, McMorris argued, there was nothing linking him to the

theft. In rebuttal, the prosecutor argued there was evidence linking McMorris to the theft—specifically, the evidence that one of the women had called Officer Schmitz, to give him McMorris's address. But the trial court had excluded that evidence as hearsay. McMorris objected, and the trial court sustained the objection, telling the jury to disregard the prosecutor's statement. Rebuttal continued:

> [PROSECUTOR]: All right. You are aware that [O]fficer Schmitz spoke to these women. We are aware that Officer Schmitz –
>
> [DEFENSE COUNSEL]: Your Honor, I would object. Counsel is asking the jury to speculate.
>
> THE COURT: Sustained. Sustained.
>
> [PROSECUTOR]: You are aware of where the deputies ended up, the address that they ended up, and you can use your common sense to –
>
> [DEFENSE COUNSEL]: Your Honor.

At that point, the trial court had the jury retire to the jury room, and McMorris moved for a mistrial. The trial court told the prosecutor, who appeared confused by the evidentiary ruling, that he could not base an argument on evidence the court had excluded in trial.

> You were not able to present any competent evidence of whatever those ladies told anybody because they were not available, and whatever they had to say was hearsay. I am not going to allow you to suggest to the jury what it was that they said, because that's just not proper. And that's exactly what you're trying to do, is to try to let the jury know that those witnesses provided information to the officers, which is hearsay. It's not admissible for the truth of the matter asserted.

The court indicated the prosecutor was very close to a mistrial, telling him his argument was improper. When the jury reentered, the court gave this instruction—

"I'm striking the last comment made by [the prosecutor], and you're to disregard it." The court's instructions to the jury also included the standard instruction that the attorneys' comments are not evidence or the law and that the jury has to base its decision on the evidence presented at trial and on the instructions given to them by the court.

The jury convicted McMorris as charged. McMorris renewed his motion for a mistrial, which the trial court denied. The trial court sentenced McMorris to nine months confinement with credit for time served.

McMorris appeals.

ANALYSIS

McMorris argues the prosecutor's improper reference to excluded evidence during closing argument denied him a fair trial. He contends there is a substantial likelihood the improper argument affected the jury's verdict because the State's case against him was so weak. He further argues the errors could not be remedied through the court's curative instructions because the prosecutor made the improper statements during rebuttal. While we agree the prosecutor's statements in rebuttal were improper, we conclude the court's subsequent instructions cured any prejudice.

"'Allegations of prosecutorial misconduct are reviewed under an abuse of discretion standard.'" State v. Lindsay, 180 Wn.2d 423, 430, 326 P.3d 125 (2014) (quoting State v. Brett, 126 Wn.2d 136, 174-75, 892 P.2d 29 (1995)). The defendant bears the burden of showing that the comments were improper and, if so, whether the improper comments caused prejudice. State v. Emery, 174 Wn.2d

741, 756, 278 P.3d 653 (2012); State v. Warren, 165 Wn.2d 17, 26, 195 P.3d 940 (2008). Because McMorris objected to the prosecutor's statements at trial and moved for a mistrial, McMorris must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. Emery, 174 Wn.2d at 760. "In analyzing prejudice, we do not look at the comments in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury." Warren, 165 Wn.2d at 28.

"'Misconduct is to be judged not so much by what was said or done as by the effect which is likely to flow therefrom.'" Emery, 174 Wn.2d at 762 (quoting State v. Navone, 186 Wash. 532, 538, 58 P.2d 1208 (1936)). Focusing on the effect of the prosecutor's conduct is crucial because even "certainly flagrant" conduct may be cured in light of the context of the total argument, issues, evidence, and jury instructions. Id. at 762 n.13 (quoting Warren, 165 Wn.2d at 27). "'The criterion always is, has such a feeling of prejudice been engendered or located in the minds of the jury as to prevent a [defendant] from having a fair trial?'" Id. at 762 (alteration in original) (quoting Slattery v. City of Seattle, 169 Wash. 144, 148, 13 P.2d 464 (1932)).

We begin by analyzing the propriety of the prosecutor's comments. While a prosecuting attorney has wide latitude during closing argument to draw and express reasonable inferences from the evidence, State v. Gentry, 125 Wn.2d 570, 641, 888 P.2d 1105 (1995), it is improper for a prosecutor to argue from facts not in evidence, State v. Perkins, 97 Wn. App. 453, 459, 983 P.2d 1177 (1999).

McMorris challenges the following argument by the prosecutor in rebuttal:

[PROSECUTOR]: It's worth discussing, the possibility that Ms. Burger and Ms. Johnson -- and I would suggest Ms. Johnson somehow might have been the one to disappear and take this vehicle, even though, again, what you saw from the surveillance doesn't line up with that at all. So Ms. Burger must have then, after leaving at 12:30, and mind you, they just had been speaking with Officer Schmitz, as you heard, <u>and they are the ones that told Officer Schmitz the address that Officer Schmitz relayed to the sheriff's</u> --

[DEFENSE COUNSEL]: Your Honor, I would object and ask that that be stricken.

THE COURT: I'm sustaining that objection. I'm striking that, and telling the jury to disregard that statement.

[PROSECUTOR]: All right. You are aware that [O]fficer Schmitz spoke to these women. We are aware that Officer Schmitz –

[DEFENSE COUNSEL]: Your Honor, I would object. Counsel is asking the jury to speculate.

THE COURT: Sustained. Sustained.

[PROSECUTOR]: You are aware of where the deputies ended up, the address that they ended up, and you can use your common sense to –

[DEFENSE COUNSEL]: Your Honor.

(Emphasis added.)

The State concedes the first statement's impropriety. It contends, however, that the other two statements were supported by the evidence and that the prosecutor was arguing permissible inferences. The other two statements were supported by the evidence, but we disagree that the prosecutor's attempted argument from these statements was a permissible inference.

The cases on which the State relies are distinguishable as neither case involved a prosecutor asking a jury to infer—from the fact that a police officer spoke with a witness and thereafter arrested a defendant—that the witness told police

the defendant had committed the crime. In re Pers. Restraint of Phelps, 190 Wn.2d 155, 167-68, 410 P.3d 1142 (2018) (in rape of child case, prosecutor argued defendant's conduct constituted "grooming" of victim; characterization of defendant's relationship with victim was permissible inference drawn from admitted evidence); Perkins, 97 Wn. App. at 459-60 (permissible for prosecutor to argue that, given the likely street value of the amount of methamphetamine found in defendant's car, it was reasonable to infer defendant's possession was not unwitting).

Here, the prosecutor wanted the jury to infer—from the fact that Burger or Johnson called Officer Schmitz and the fact that deputies later showed up at McMorris's property—that the women told Officer Schmitz where to find McMorris and the stolen vehicle. But neither Burger nor Johnson testified at trial. Any inference about the content of the conversation would have been unreasonable because it was not based on any admitted evidence. For this reason, we conclude the prosecutor's statements were improper as well.

Nevertheless, we conclude McMorris has failed to demonstrate a substantial likelihood that the prosecutor's statements affected the jury's verdict. The evidence showed McMorris knew Burger and Johnson because he arrived at the casino with them. The security footage showed Burger picking up Todaro's keys and then handing them to McMorris. Then McMorris is seen exiting the casino with the keys, and a few minutes later, an Explorer closely resembling Todaro's can be seen leaving the casino parking lot. Several hours later, sheriff's deputies recovered Todaro's Explorer, hidden on property McMorris admitted

belonged to him. And lastly, while in custody on only one charge—the theft of the Explorer—McMorris admitted to his father in a recorded jail call that he might have to do some time for what he did.

McMorris objected to each of the prosecutor's improper statements in closing. The court sustained the objections and instructed the jury to disregard the statements. Juries are presumed to follow instructions, including the instructions that counsel's arguments are not evidence and to disregard improper evidence. Warren, 165 Wn.2d at 29; see also State v. Dye, 178 Wn.2d 541, 556, 309 P.3d 1192 (2013); State v. Russell, 125 Wn.2d 24, 84, 882 P.2d 747 (1994). Given the evidence of McMorris's involvement in the theft, we conclude the court's instructions to the jury cured any possible prejudice from the improper statements and there is little likelihood the improper statements affected the jury's verdict. See Warren, 165 Wn.2d at 28 & n.5 (holding no prejudice where prosecutor's "flagrant" misstatement of reasonable doubt standard cured by trial court instruction).

McMorris argues the trial court's instructions were insufficient to cure any prejudice. We are unpersuaded by this argument.

The cases on which McMorris relies are distinguishable.[1] In State v. Copeland, 130 Wn.2d 244, 284-85, 922 P.2d 1304 (1996), our Supreme Court held a curative instruction was sufficient to alleviate any possible prejudice caused by a prosecutor improperly cross-examining a key defense witness by mentioning horrific details of that witness's prior crimes. While the questions were deemed an

---

[1] Neither State v. Escalona, 49 Wn. App. 251, 252, 256, 742 P.2d 190 (1987), nor Krulewitch v. United States, 336 U.S. 440, 442-45, 453, 69 S. Ct. 716, 93 L. Ed. 790 (1949), involve prosecutorial misconduct. As a result, they are inapplicable and McMorris's reliance on them is misplaced.

improper attempt to influence the jury's perception of the witness and his testimony, the court nevertheless held that, in light of the circumstances of the case, the curative instruction alleviated any prejudice. Id. at 285. The cross-examination questions in Copeland were far more egregious and potentially prejudicial than the prosecutor's closing arguments here.

And in State v. Belgarde, 110 Wn.2d 504, 508-10, 755 P.2d 174 (1988), during a murder trial, the prosecutor said the defendant belonged to the American Indian Movement (AIM), a "group of butchers and madmen who killed indiscriminately." Id. at 508. The prosecutor went on to compare AIM members to "Kadafi," the former dictator of Libya, and to Sean Finn of the Irish Republican Army (IRA). Id. The court held these statements, to which the defendant did not object, introduced facts not in evidence and were so highly inflammatory and prejudicial that retrial was the only remedy. Id. The ruling was based on the substantial likelihood that no curative instruction could have "erased the fear and revulsion jurors would have felt if they had believed the prosecutor's description of the Indians involved in AIM." Id.

McMorris cannot credibly argue his case is analogous to the circumstances in Belgarde. The prosecutor made three statements about Officer Schmitz's interaction with Burger and Johnson; he did not make inflammatory comments about McMorris's past crimes or any links to any organizations potentially perceived by jurors as violent.

Given the evidence against McMorris, he has failed to show that he was prejudiced by the prosecutor's comments. In light of all the circumstances, we

conclude any possible prejudice resulting from the improper argument was cured by the court's instruction. Because there was no prejudice affecting the jury's verdict, the court did not abuse its discretion by denying McMorris's motion for a mistrial. Emery, 174 Wn.2d at 765 (review a trial court's decision on a motion for mistrial for an abuse of discretion; abuse exists only """"when no reasonable judge would have reached the same conclusion""""") (quoting State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989) (quoting Sofie v. Fibreboard Corp., 112 Wn.2d 636, 667, 771 P.2d 711, 780 P.2d 260 (1989))).

    Affirmed.

_Andrus, A.C.J._

WE CONCUR:

_Chun, J._         _Appelwick, J._